*"Plaintiff's Amended Complaint"* CASE 2:17-CV-18

PRISONER'S CIVIL RIGHTS COMPLAINT (Rev. 05/2015)

## IN THE UNITED STATES DISTRICT COURT
### FOR THE __Southern__ DISTRICT OF TEXAS
__Corpus Christi__ DIVISION

Clerk, U.S. District Court
Southern District of Texas
FILED

OCT 0 5 2017

David J. Bradley, Clerk of Court

Bobbie Lee Haverkamp AKA
David Alan Haverkamp # 702013
Plaintiff's Name and ID Number

Stiles Unit, Beaumont, Texas
Place of Confinement

CASE NO. __2:17-CV-18__
(Clerk will assign the number)

v.

John Doe UTMB Medical, Austin Texas
Defendant's Name and Address

Jane Doe UTMB Medical, Austin, Texas
Defendant's Name and Address

John + Jane Doe UTMB Mental Health, Austin Texas
Defendant's Name and Address
( DO NOT USE "ET AL.")

---

### INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1. To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2. Your complaint must be legibly handwritten, in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACK SIDE OF ANY PAGE.** ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3. You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4. When these forms are completed, mail the original and one copy to the clerk of the United States district court for the appropriate district of Texas in the division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. If you are confined in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), the list labeled as "VENUE LIST" is posted in your unit law library. It is a list of the Texas prison units indicating the appropriate district court, the division and an address list of the divisional clerks.

**FILING FEE AND *IN FORMA PAUPERIS* (IFP)**

1

1. In order for your complaint to be filed, it must be accompanied by the statutory filing fee of $350.00 plus an administrative fee of $50.00 for a total fee of **$400.00**.

2. If you do not have the necessary funds to pay the fee in full at this time, you may request permission to proceed *in forma pauperis*. In this event you must complete the application to proceed *in forma pauperis*, setting forth information to establish your inability to prepay the fees and costs or give security therefor. You must also include a current six-month history of your inmate trust account. If you are an inmate in TDCJ-CID, you can acquire the application to proceed *in forma pauperis* and the certificate of inmate trust account, also known as *in forma pauperis* data sheet, from the law library at your prison unit.

3. The Prison Litigation Reform Act of 1995 (PLRA) provides "...if a prisoner brings a civil action or files an appeal *in forma pauperis,* the prisoner shall be required to pay the full amount of a filing fee." *See* 28 U.S.C. § 1915. Thus, the court is required to assess and, when funds exist, collect, the entire filing fee or an initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the court will apply 28 U.S.C. § 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from your inmate trust account, until the entire $350.00 statutory filing fee has been paid. (The $50.00 administrative fee does not apply to cases proceeding *in forma pauperis.*)

4. If you intend to seek *in forma pauperis* status, do not send your complaint without an application to proceed *in forma pauperis* and the certificate of inmate trust account. Complete all essential paperwork before submitting it to the court. This has already Been Done.

**CHANGE OF ADDRESS**

It is your responsibility to inform the court of any change of address and its effective date. Such notice should be marked **"NOTICE TO THE COURT OF CHANGE OF ADDRESS"** and shall not include any motion for any other relief. Failure to file a NOTICE TO THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedure.

I. PREVIOUS LAWSUITS:

    A. Have you filed *any* other lawsuit in state or federal court relating to your imprisonment? ___YES ✓NO

    B. If your answer to "A" is "yes," describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)
       1. Approximate date of filing lawsuit:_____
       2. Parties to previous lawsuit:
          Plaintiff(s)_____
          Defendant(s)_____
       3. Court: (If federal, name the district; if state, name the county.)_____
       4. Cause number: _____
       5. Name of judge to whom case was assigned: _____
       6. Disposition: (Was the case dismissed, appealed, still pending?) _____
       7. Approximate date of disposition:_____

II.     PLACE OF PRESENT CONFINEMENT: Stiles Unit, Beaumont Texas

III. **EXHAUSTION OF GRIEVANCE PROCEDURES:**

Have you exhausted all steps of the institutional grievance procedure? ✓ YES ___ NO

Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

*Copy Attached*

IV. **PARTIES TO THIS SUIT:**

A. Name and address of plaintiff:

David Alan Haverkamp A/KA Bobbie Lee Haverkamp #702013
3060 FM 3514 | Stiles Unit, Beaumont, Texas 77705

B. Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address. *John and Jane Doe Are approved by the Court.*

Defendant #1: John and Jane Doe, University of Texas Medical Branch Directors, Austin Texas c/o Texas Attorney General

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Discrimination, Sex-Stereotyping And Breach of Care

Defendant #2: John and Jane Doe, University of Texas Mental Health Services Directors, Austin Texas c/o Texas Attorney General

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Discrimination, Sex Stereotyping, Breach of Care

Defendant #3: John and Jane Doe, University of Texas Regional Medical Directors of UTMB, Austin Texas c/o Texas Attorney General

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Discrimination, Sex Stereotyping, Breach of Care

Defendant #4: John and Jane Doe, University of Texas Senior Medical Directors, Austin, Texas c/o Texas Attorney General

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

Discrimination, Sex Stereotyping, Breach of Care.

Defendant #5: _____

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

V. **STATEMENT OF CLAIM:**

3

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how each defendant is involved. You need not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember the complaint must be stated briefly and concisely. IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

The Defendant Discriminate Against the Plaintiff by allowing treatment of cisgender women, but discriminates against the Discriminates Against the Plaintiff because she is a Transgender woman and will not allow the same treatment as cisgender

The Defendant Sex Sterotype the Plaintiff by insisting she look Male, act Male, be Male Even though she is being treated with female Hormones

The Defendants Breach the Care of the Plaintiff by not allowing Surgery for vaginplasty as cisgender women have

## VI. RELIEF:

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Provide the Relief request in the Amended complaint Stop the Discrimation, Sex Sterotyping and heal the Breach of Care

## VII. GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases.

David Alan Haferkamp — Bobbie Lee Haverkamp

B. List all TDCJ-CID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you.

TDC 702013

## VIII. SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed?      ___YES  ✓NO

B. If your answer is "yes," give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

1. Court that imposed sanctions (if federal, give the district and division): _____

2. Case number: _____

3. Approximate date sanctions were imposed: _____

4. Have the sanctions been lifted or otherwise satisfied?     ___YES ___NO

C. Has any court ever warned or notified you that sanctions could be imposed? _____YES ✓NO

D. If your answer is "yes," give the following information for every lawsuit in which a warning was issued. (If more than one, use another piece of paper and answer the same questions.)

1. Court that issued warning (if federal, give the district and division): _____

2. Case number:_____

3. Approximate date warning was issued:_____

Executed on: _Sept 28, 2017_
                    DATE

_Bobbie Lee Haehap AKA_
_David Alan Haerkamp_
(Signature of Plaintiff)

## PLAINTIFF'S DECLARATIONS

1. I declare under penalty of perjury all facts presented in this complaint and attachments thereto are true and correct.

2. I understand, if I am released or transferred, it is my responsibility to keep the court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.

3. I understand I must exhaust all available administrative remedies prior to filing this lawsuit.

4. I understand I am prohibited from bringing an *in forma pauperis* lawsuit if I have brought three or more civil actions or appeals (from a judgment in a civil action) in a court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.

5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assessed by the court, which shall be deducted in accordance with the law from my inmate trust account by my custodian until the filing fee is paid.

Signed this ____28th____ day of ____Sept____, 20 17 .
                    (Day)                        (month)                    (year)

_Bobbie Lee Haely AKA_
_David Alan Haerkamp_
(Signature of Plaintiff)

**WARNING: Plaintiff is advised any false or deliberately misleading information provided in response to the above questions may result in the imposition of sanctions. The sanctions the court may impose include, but are not limited to, monetary sanctions and the dismissal of this action with prejudice.**

United States District Court
Southern District of Texas
Corpus Christi Division

| | |
|---|---|
| Bobbie Lee Haverkamp<br>Plaintiff<br><br>vs<br><br>John or Jane Doe | First Amended Complaint<br><br>Civil Action 2:17-CV-18 |

Directors of University of Texas Medical Branch at Austin, Texas.

Directors of University of Texas Mental Health Services Medical Branch at Austin, Texas.

Directors of University of Texas Regional Medical Services Branch of Texas,

University of Texas Senior Medical Directors Services Branch of Texas Defendants.

---

## Plaintiff's First Amended Complaint

To the Honorable Justices of said Court:

Now comes Bobbie Lee Haverkamp, Pro Se, AKA - the plaintiff, and files a first Amended Complaint under 42 U.S.C. § 1983

## Jurisdiction

The court has jurisdiction over claims pursuant to 42 U.S.C. § 1983.

The Corpus Christi Division, for the Southern District of Texas, is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occured.

## Parties

The plaintiff has used John and Jane Doe as the defendants with permission of Magistrate Judge Ellington; also by consent of Texas Attorney General's Attorneys: Heather RHEA, Celemaine Cunniff, Ariel Wiley will identify what parties are involved.

The defendants, due to the fact that they are the only ones allowed to approve the Standard of Care and Treatment Plans for Gender Dysphoria, are the specialists in the Gender Dysphoria Treatment for the Plaintiff as a Transgender Woman. The Court is to set a hearing on this item — (Discovery - Qualifications of Defendants).

## Nature of Action

Plaintiff brings this Civil Rights action under 42 U.S.C. § 1983 to seek injunction relief based on the defendants action for discrimination and stereo-typing in the

Treatment of a medical condition known as Gender Dysphoria, and the "Breach of Contract" that involves Policy 51.11 and its attachments. The office of Professional Standards UTMB Health Services said, "The defendants (specialist) must follow the CMHC - Policy G-51.11 with all attachments to treat/provide a Transgender with treatment for this condition." There has been a breach of contract.

## Aug. 23, 2017 Hearing

In the Aug. 23, 2017 hearing, Judge Ellington wanted to know the exact relief the plaintiff wanted, and Judge Ellington wanted the relief tailored to the plaintiff, not the world, also — all legal claims are to be included in the Amended Complaint and tailored to the plaintiff's medical needs. The Court is to have a second (2nd) hearing on the "Doe's" and relief.

## The Relief I Request

#1

- pg. 27, Policy 51.11 - Attachments Standard of Care.

The defendants recognized that it had to be my decision to have Gender Reassignment Surgery according to the CMHC Committee Policy that the defendants had to provide Gender Reassignment Surgery if the plaintiff requested the surgery.

The goal of the Oct. 17, 2014 meeting with Dr. Meyer and nurse Hicks was Gender Reassignment surgery, if requested by the plaintiff.

The plaintiff did, in fact, request Gender Reassignment surgery in accordance with Policy 51.11 and it's attachments.

The Court is being asked to remember that the 5th Circuit case on Gender Reassignment Surgery involves the world and the plaintiff should be allowed a Court Appointed Attorney at 30 days to begin the process of familiarization of the case, at 60 days full discovery allowed, and 90 day trial in front of a Jury as the defendants wanted.

Gender Reassignment Surgery in this case involves only the plaintiff who is a Transgender Woman (and has been certified as such by the UTMB). The breach in Policy 51.11 to treat Gender Dysphoria, and its attachments (to include Gender Reassignment Surgery) is a breach which needs to be healed — rectified. The defendants own office of Proffessional Standards declare that the defendants must follow all of Policy 51.11 when treating Gender Dysphoria. Provide Gender Reassignment Surgery.

Provide surgeon for counseling that was supposed to happen in the original Civil Action 2:17-CV-18.

The plaintiff has more than met the requirements of replacement or higher estrogen for at least one year before surgery can be considered, this is per UTMB's own defendants (Discovery - Office of Professional Standards - Disposition).

#3

Provide the Standard of Care and Treatment plan that is medically acceptable in the medical community in the Treatment of Gender Dysphoria that is tailored to the plaintiff for Gender Reassignment Surgery (Discovery - Previous SoC).

#4

Provide a psychiatric Doctor with experience in Treating Gender Dysphoria and who can absolutely prescribe Treatment.

#5

Prescribe and provide access clothing, cosmetics, hygiene items according to the female items listed on The TDCJ Inventory

sheet and Inmate Commissary Items.
Provide medical passes for these items.
Provide a replacement schedule for these
items (to include the amount of time
between replacements). (Legal Claim # 13)

#6

Provide medical care to bring facial skin
and secondary skin characteristics in line
with female identity (office of Professional
Standards - Director, Dispositions).

#7

Provide medical pass for plaintiff to
grow her hair to standard female length.

#8

Provide a Coordinator that will bring
relief to a close.

#9.

Provide educational material on Gender
Dysphoria as listed in the reference in
WPATH Standard of Care. There are 22
pages in WPATH SOC (Discovery pg. 71 - 91 -
WPATH SOC).

# Factual Background

Plaintiff was first diagnosed with Gender Dysphoria on June 6, 2013 by a University of Texas Psychiatric Doctor — Dr. Philip Farley.

<u>pg. 20 of 117</u> — Plaintiff was re-examined on Oct. 17, 2014, by Dr. Walter Meyer, and was prescribed hormone therapy for a 12-month period Referral for Gender Reassignment Surgery.

This provided confirmation that WPATH Standard of Care was part of Policy 51.11's attachment (Disovery Item)

It should be noted that the defendants gave their approval for the prescription of the hormone estrodil in accordance with Policy 51.11 and the WPATH Standard of Care. The WPATH Standard of Care came from the defendants UTMB Computer and was given to the plaintiff by UTMB's practice Manager, Ms. Williams, who, at that time, was on the McConnell Unit (2013 to Mid 2014) (Discovery Item)

<u>pg. 30 of 117 Civil Action</u> — The defendants, and only the defendants, can approve the Standard of Care and Treatment plans for Gender Dysphoria. The defendants are the specialist in the Treatment of Gender Dysphoria (Discovery Item; CMHC Commitee Policy).

— After the Oct. 17, 2014 meeting with Dr. Meyer that confirmed that Gender Reassignment Surgery was offered and available to the plaintiff. The plaintiff asked for some space to think about it because Texas Tech would not tell her what was wrong.

Nurse Hick explained that the plaintiff would not lose her Transgender Status in the event the plaintiff were to decline surgery; Also, Texas Tech did not treat Gender Dysphoria and had no Dr. who did.

This was later confirmed with Texas Tech subcontracting all Gender Dysphoria patients to UTMB Medical Contractors (Discovery Item — contracting / Defendants) (Texas Tech Contract with Defendants).

— The plaintiff accepts the offer of Gender Reassignment Surgery and requests the surgery at the earliest possible time. The date the plaintiff accepted the offer was Oct. 22, 2014, five days after the Oct. 17, 2014 meeting. In another meeting, the plaintiff requested that Dr. Meyer go slow — not rushing the treatment — in that the goal was and is to arrive safely for Gender Reassignment Surgery. The plaintiff is a UTMB Certified Transgender Woman, Oct. 22, 2014, by defendant's own admissions.

pg. 44 of 117 — The Court can read on Mar. 8, 2016, the plaintiff was 3 months into the 12 month requirement on higher estrogen before surgery. The countdown had started.

pg. 46 of 117 — Letter to Ms. Alexander that Dr. Meyer said I was 3 months into the 12 month requirement before Surgery. Dr. Meyer said, "UTMB is going to have to face the inevitable that Gender Reassignment Surgery is going to happen."

pg. 34 of 117 — Mar. 28, 2016 — Letter to Ms. Alexander (date stamp on bottom) — The defendants abandon the plaintiff on the subject and treatment for Gender Dysphoria. No T.V. conferences were ever held, no letters were ever answered. (Discovery Item - Notes/E-mails; Disposition Item).

pg. 70 of 117 — The defendants abandon the plaintiff on long-hair pass, panties, bra's. Dr. Meyer's recommendation will not be honored, Oct. 24, 2016 (Discovery Item - E-mails; Disposition Item - Defendants Statement/Actions).

pg. 1 of 117 - Plaintiff filed for relief in Civil Action 2:17-CV-18 on Jan. 13, 2017.

<u>Aug. 23, 2017</u> — Hearing with Judge Ellington and defendants Attorneys — all motions are dismissed by mutual agreement and the plaintiff instructed to file an Amended Complaint on the relief requested tailored to her needs with legal claims.

<u>pg. 19 - 71 of 117</u> — of the Original Civil Action 2:17-cv-18 filed Jan, 13, 2017 are again alleged and incorporated by reference for the first amended complaint.

<u>pg. 7-9 (para, 39) of 117</u> — of the Original Civil Action 2:17-cv-18 filed Jan. 13, 2017 are again alleged and incorporated in the first amended complaint.

<u>WPATH Standard of Care</u> as attachment to Policy G-51.11 — is again alleged and incorporated in the amended complaint per the office of Professional Management that said the specialist must follow policy G-51.11 with the attachments (WPATH Standard of Care).

## <u>Legal Claim One</u>

The defendants have a policy where all medications are given KOP (Keep On Person). The only medication not given KOP is a very expensive medication or Narcotic medication. (Discovery, E-mail, Huntsville Pharmacy Policy).

A Transgender woman takes in pill form Estradoil for hormone therapy. Estradoil is not expensive and is non-narcotic.

The defendants harass, vex, and discriminate against the plaintiff by making her get fully dressed, go outside the building in the weather, stand in line to receive one pill of Estradoil at 2:30 AM,

Non Trans-gender women are given Estradoil KOP while a Transgender woman is discriminated against by application of the same medication in a different and more restrictive, distressing manner.

The plaintiff was forced by circumstances beyond her control to switch to hormone shots which are painful.

The defendants discriminate by treating a transgender woman different from a non-Transgender woman in application of Estradoil in pill form.

The difference in application does not further any important government interest, nor is it rationally related to any legitimate government interest. This claim is one of Equal Protection and discrimination that violates the 14th Amendment of the United States Constitution.

## Legal Claim Two

The issue before the court is what Standard of Care and Treatment are the defendants using to Treat Gender Dysphoria for the plaintiff as a Transgender Woman? (Discovery Item).

Dr. Meyer, Treating Specialist, <u>sent the plaintiff back to the defendants for the Standard of Care for Gender Dysphoria.</u>

pg. 22 of 117 - the Court can read that on Aug. 4, 2015, Dr. Kwanto, the McConnell Unit Local Doctor looked on the UTMB Computer and saw no Standard of Care or Treatment plans for the Treatment of the Plaintiff as a Transgender Woman for Gender Dysphoria.

pg. 26 of 117 - the Court can also read That a letter was sent to the defendants asking for the final cure for Gender Dysphoria and inquiring what Standard of Care the plaintiff was being Treated under (Discovery Disposition).

## Summary

A non-Transgender Woman has a Standard of Care they are Treated with, but when the defendant is denied the Standard of Care and Treatment plan To Treat and cure Gender Dysphoria as a Transgender Woman (as certified) - then the 14th Amendment To The United States Constitution based on discrimination and sex-stereotyping is invoked.

## Legal Claim Three

The defendants are medical contractors who treat non-transgender women with different ailments which require surgery as a cure. These women receive proper consultation and access to expertise for surgery as their cure (Discovery - name these people and qualifications).

The defendants are aware that the plaintiff, as a Transgender woman, is denied proper consultation for Gender Dysphoria and Gender Reassignment Surgery and has disregarded these needs and the risk of harm stemming from Gender Dysphoria, while a Cisgender woman in similar circumstances have full access to specialized consultation for surgery.

The defendants allow the treatment for non-transgender women inmates with certain conditions such as cystocele, but those same defendants single out inmates such as the plaintiff who's assigned 'male' at birth; further, the plaintiff was certified as a Transgender woman by those same defendants; and yet, the plaintiff, who is a Transgender woman is receiving discriminatory treatment by the defendants who are establishing onerous, significant barriers to effectively block treatment of vaginoplasty.

The defendants discriminate on the basis of Gender and the plaintiff's Transgender Woman status by failing to

give proper consideration to the specific circumstances of the plaintiff's gender and the need for proper consultations for gender Dysphoria; but the defendants either blatantly ignore the plaintiff's requests — OR — based on their conclusions on factors and processes, they deny treatment to the plaintiff who is a Transgender woman, when these defendants would not use those same factors and processes to deny treatment for a cisgender woman whose treatment plan also required a life-saving or curing surgery.

Due to the difference in treatment, similarly situated non-transgender women with serious medical needs are able to receive adequate medical care, including medically necessary vaginoplasty; but the plaintiff, assigned male at birth, and Transgender woman, who requires such treatment, is either barred from receiving it, or at a minimum — held to a more onerous standard (Discovery Item).

The difference between treatment of transgender women and non-transgender women does not further any important government interest in a way that is substantially related to that interest, nor is it rationally related to any government interest.

By failing to provide proper consultation and access to expertise for Gender

The difference in treatment between Transgender women and non-Transgender women does not further any important government interest in a way that is substantially related to That interest, nor is it rationally related to any legitimate government interest.

The defendants discriminatory refusal to prescribe and furnish these personal items is causing irreparable harm to the plaintiff because the defendants force the plaintiff to be stereotyped to fit the defendants determination to force her (the plaintiff) to look male because they (the defendants) have decided that she is male — and therefore, the defendants have determined to force the Transgender Woman (the plaintiff) to look male, dress male, and be male regardless of her legally certified status as a Transgender Woman — legally, and biologically, and mentally Transgender Woman. This causes severe anxiety and distress, and this discrimination further encourages the mistreatment of and the discrimination against the plaintiff in other contexts and by other persons.

By failing to prescribe and to furnish clothing, cosmetics, and female hygiene items in conformity with TDCJ property Inventory under Gender Related (Females Only), the defendants have deprived the plaintiff of her right to equal protections of the law as guaranteed by the 14th

Reassignment Surgery, the defendants have deprived the plaintiff of her right to Equal Protection of Laws guaranteed by the 14th Amendment of the United States Constitution. This is sex-stereotyping and discrimination.

## Legal Claim Four

There is a violation of 42 U.S.C § 1983 based upon deprivation of the 14th Amendment right to equal protection by refusing the plaintiff, a Transgender woman access to personal items approved and available to cisgender inmates on female institutions on the basis of Gender, while those same personal items (clothing, cosmetics and hygiene) which are approved for Cisgender women are then denied to Transgender women, simply because they are "male" at birth.

The defendants have singled out the plaintiff, assigned male at birth - and because of her "Transgender woman status, the defendants refuse to prescribe and furnish products which would enhance the plaintiff's ability to function as a Transgender woman in her environment (Discovery Item)

The defendants discriminate by not providing clothing, cosmetics, and hygiene that would bring the plaintiff's primary and secondary sex characteristics into conformity with her female identity (Discovery Item).

Amendment to the United States Constitution. (Discovery Item - CMHC Policy's from 2006 to present).

This is discrimination and sex-stereotyping by making the plaintiff be male - act male (as they determine a "male" should act), and look male (as they determine a "male" should look) — even though the defendants have classified her as a "Transgender Woman"; Thus, the defendants determine the plaintiff to be Transgender Woman and then sex-stereotype her as "male" - and then demand/require her to look and act male.

## Legal Claim Five

The defendants discriminate against the plaintiff by making medical decisions based on Financial and political concerns. The plaintiff is allowed to prove a fact Based from circumstantial evidence for a jury to draw an inference from. In a Prima Facie case, the plaintiff is allowed to present a presumed fact. The reason for the presumption is that the plaintiff will process direct evidence of one fact which a second fact will follow. The plaintiff's prima facie produces a required conclusion in the absence of explanation.

The defendants are paid medical contractors to the State of Texas. They hold a position on government committee that exerts influence on how state Tax-payer money flows into their pockets (Discovery Item - Contract of Defendants).

In Federal Court, the State of Texas and the United States of America are in a legal and political battle to deny access to marriage between same-sex couples through the defense of the Marriage Act.

When same-sex couples, in the state of Texas, cannot access the simple rite of marriage, then a Transgender woman, such as the plaintiff, who is in need of a Standard of Care and Treatment plan that includes relief as requested in the First Amended Complaint, but is denied— then a Prima Facia case is made for the denial based on political factors and financial concerns of future government contracts (Contracts between the State will be Asked in Discovery).

Correctional Managed Health Care Policy G-51.11 with WPATH Standard of Care as the attachments was formulated in Jan. 2006 —and, as to date, not one person has accessed Gender Reassignment Surgery under Policy 51.11 and the attachments (Discovery Item).

In a Sept. 15, 2015 meeting with Dr. Meyer and nurse Hicks, the plaintiff was told very plainly that TDCJ would not pay for surgery (Discovery Item).

To this, the plaintiff replied, "I've been in prison 24 years and at no time, under any circumstances, has TDCJ ever interfered with my medical treatment. In fact, I had a Non-GID related surgery

(the removal of my thyroid) which TDCJ never interfered with. It doesn't make any sense to say "TDCJ won't pay for Gender Reassignment Surgery; A Non-Transgender woman can have vaginoplasty surgery anytime — why can't I?"

This type of argument is the classic "He said, she said" argument that is worthless to solve differences.

When the defendants signed the Texas Prison Health Care Policy G-51.11 with the attachments, all treatment plans, including Gender Reassignment Surgery as a cure were included and paid for (Discovery - Contract).

## Summary

The defendants are well aware of the plaintiff's medical needs for Gender Dysphoria which Two (2) UTMB Doctors prescribed Treatment for, but which prescribed Treatment has been and is continuing to be ignored by the defendants because of financial and political preferences/reasons/excuses. (Discovery Item - UTMB Contract Amount).

The plaintiff's rights under the 14th Amendment and Equal Rights are violated. This Claim should be considered "fair notice", the plaintiff intends To present a Prima Facie case To the jury on this issue.

# Legal Claim Six

The defendants discriminate against the plaintiff, who is a Transgender woman, by refusing to provide the total care and cure for Gender Dysphoria — by not providing Gender Reassignment surgery according to Policy G-51.11 and attachments. The defendants provide vaginoplasty surgery to Cisgender women for their medical care but refuse that same surgery treatment for this Transgender woman (Discovery — 2017 Civil Rights Survey — Austin Texas).

The defendants can not say that because they have provided some fractional portion of total care that they have then provided a Transgender woman complete and acceptable medical treatment.

As far back as 1997, the defendants very own American Medical Association, under a Federal case — Maggert vs. Hawk — (131 F3d 670), cited the care for a Transgender woman consist not of psychiatric treatment designed to make the patient content with biological sexual identity (which is treatment proven not to work) — rather, care for a Transgender woman does consist of Estrogen therapy designed to create the standard characteristics of a woman, followed by removal of the genitals and construction of a vagina with substituted penile tissues.

The defendants can not advance to the

Court that there are not surgeons who perform this surgery. Once policy 51.11 with WPATH Standard of Care as the attachment was made part of the Correctional Health care Policy and guidelines, the defendants then and there put the State on notice that they (the defendants) would do the complete feminization for a Transgender Woman under policy 51.11 (Contract will be asked for in Discovery).

The difference in the application of surgery for a Transgender woman and a cisgender woman does not further any important government interest in a way that is substantially related to that interest, nor is it rationally related to any legitimate government interest (Discovery — PREA and the defendants).

The defendants discriminate and sex-stereotype the plaintiff by denying her Gender Reassignment Surgery, depriving the plaintiff of her right to Equal Protection of the laws guaranteed by the 14th Amendment of the United States Constitution.

## Legal Claim Seven

Legal claim seven is the "Personal Contract Claim" and "Blanket denial" that the defendants practice in discrimination and sex-stereotyping against the plaintiff by not fulfilling the contract that is in the attachment to Policy G-51.11.

The attachment is provided to the Court for their review.

The defendants should consider this claim "fair notice" that the plaintiff will present to the jury a "Breach of Contract."

The Court can read on pg. 27 in Policy 5h.ll attachments (3rd para.) that "It is important for mental Health professionals to recognize that decisions about surgery are first and foremost a clients decision" — as all decisions regarding healthcare.

pg. 20 of 117 Civil Action — The decision to have Gender Reassignment Surgery was the plaintiffs' to bear and was presented as such to the plaintiff, by Dr. Meyer and Nurse Hicks on Oct. 17, 2014.

pg. 21 of 117 Civil Action — On Oct. 22, 2014, the plaintiff did, in fact, make her decision to have Gender Reassignment surgery. This was not a snap or spur of the moment decision. It was a decision which had been contemplated on FROM the date of diagnosis as Transgender Woman, and the determination to proceed with Gender Reassignment Surgery was ultimately made 5 days after the plaintiff was assured by Dr. Meyer and Nurse Hicks that the decision is, in fact, the plaintiffs' to bear.

The contract goes on to say that the defendants have a responsibility to encourage, guide, and assist clients with

making fully informed decisions and becoming adequately prepared.

pg. 34 of 117 Civil Action – This is what Ms. Alexander was doing to the best of her ability when the defendants stopped her on Mar. 28, 2016. (Discovery - Ms. Alexander disposition - E-mails).

The defendants are fully aware that they have put the decision to have Gender Reassignment Surgery with the Plaintiff and they are fully aware they have to encourage, guide, and assist the plaintiff who makes this decision.

The defendants are fully aware of the preperation the plaintiff has done and yet they disregard the future risk of harm their discrimination and sex-stereotyping is and will continue to harm the plaintiff.

The defendants have harmed the plaintiff by not encouraging, guiding, assisting – supporting her in her decision to have Gender Reassignment Surgery. This is harming the plaintiff with emotional distress/stress knowing that the defendants have breached their contract and have left her in a serious situation by depriving her from receiving proper, adequate, medical care for surgery.

## Summary

Other non-Transgender women are allowed to complete vaginoplasty surgery, but because the defendant sex-stereotypes the plaintiff as male who must look and act like one, the plaintiff is treated different. The defendants violates the rights of the plaintiff under the 14th Amendment of the United States Constitution.

## Legal Claim Eight

The plaintiff is suffering discrimination by the defendants in that the plaintiff is denied a McConnell Unit, or other, Psychiatric Counselor who is qualified in Transgender Treatment who could provide Psychiatric Counseling specifically for the plaintiffs Gender Dysphoria — when all other patients with other diagnosis' do get psychiatric treatment from qualified Counselors to deal with their diagnosed condition(s).

Currently, psychotherapists at the defendants TDCJ Units are being told not to provide Gender Dysphoria specific help to Transgender women such as the plaintiff (Discovery Item).

The requirement that persons needing psychotherapy have an appointment with the specialty clinic only for This counseling (justified under paragraphs II D and III of the CMHC Policy 5P.11) is inappropriate

not holding up to professional standards for medical treatments. Appointments at this clinic are available, at most, twice per year and seldom includes any meaningful counseling related to the dealing with Gender Dysphoria in a prison community.

To be compliant with CMHC Policy A-01-1, the SOC and basic medical standards, psychotherapist, must be permitted to provide counseling for the plaintiff as a Transgender Woman. Further, the defendants must comply to the SOC and the American Psychological Associations "Guidelines for Psychological Practice with Transgender and Gender Non-conforming People" (Discovery - Medical Compliance).

The defendants refuse unit level access to Psychiatric Medical Staff who have qualifying experience in Gender Dysphoria - Neither will they allow Teleconferencing with Psychiatric Counseling Staff.

Non-Transgender women have access to mental health care that address problems with gender but the plaintiff, because she is a Transgender Woman, is denied.

The defendant can not advance that this furthers any government interest; nor is it rationally related to any legitimate government interest.

The defendants have deprived the plaintiff of her right to Equal Protection

of laws guaranteed by the 14th Amendment to the United States Constitution.

The plaintiff is Pro Se, not versed in law and asks for a liberal reading to this claim, yet proper counseling is required in the treatment of Gender Dysphoria — when cisgender women are allowed counseling and the plaintiff is denied, the 14th Amendment to the United States Constitution, and the plaintiff's rights, are violated.

## Legal Claim Nine

Plaintiff is discriminated against by the defendants refusal to provide educational materials that will help the plaintiff understand the changes in her body.

On pg. 72, in the attachments to Policy G-51.11, there is 24 pages of references that would help the plaintiff understand the changes.

However, at present, the plaintiffs only "Educational material" the plaintiff gets is from "The Jerry Springer Show" — "the" Young and the Restless" show and an occasional article from the "Hollywood Tattler."

The defendants deny educational material knowing the worry, frustration, and anxiety the plaintiff is going through. "Hamilton Books" offered a complete daily

picture medical book on a day-by-day change, but Ms. Alexander would not order it, nor would she let the mailroom get it in - because it showed a nude photo - - No medical provider would get it in for counseling the changes.

The plaintiff has to fully understand the procedures. Cisgender women understand what's happening to their bodies. The plaintiff should enjoy the same right under the 14th Amendment.

The plaintiff is having a hard time explaining this and asks for a liberal reading.

## Legal Claim Ten

The defendants discriminate against the plaintiff by trying to advance prison concerns eroneously. They claim that, due to "prison concerns", treatment which would cure the plaintiff's Gender Dysphoria by allowing complete feminization, should be stopped because that cure would pose as a security threat by promoting or provoking sexual activity or an assault.

The plaintiff recognizes that it has been and remains permissible for prison officials to be concerned with security implications of medical care prescribed for the plaintiff as a Transgender Woman,

TDCJ-ID is fully aware of UTMB's correctional Health Care Policy G-51.11; and treatment of offenders with Gender Dysphoria is a feminization policy and a medical process for those diagnosed and treated with Gender Dysphoria (Discovery - Director TDCJ, Disposition).

TDCJ is well aware of the vulnerability of the plaintiff. She has, in fact, been "Red Tagged" to housing — which means that only a Major or Unit Warden is allowed to change her housing.

TDCJ also addresses the plaintiff's vulnerability by the total application of the Prison Rape Elimination Act (PREA) 115.342 — placement of residents in housing, bed, programs, education, and work assignments and its individual determination (Discovery Item - ACA report on TDCJ Compliance). This ensures the safety of each Transgender on an individual basis.

The defendants advancement of penal concerns (potential violence and/or sexual concerns) which could arise from hetero-sexual inmates as they inter-act with Transgender inmates — is not rational or self-evidentry.

TDCJ is in full compliance with PREA and it is that compliance which assures that a Transgender getting full medical care to a cure — is, in fact, living in a safe environment to get that cure.

Complying with PREA, TDCJ houses the plaintiff in "Safe-Keeping" with other Transgenders where she is housed, fed, and medicated seperate from all General Population inmates, indeed all "Non-safe Keeping" inmates. Even the inmates who are assigned to clean (janitorial, etc...) the housing areas on "Safe-Keeping" —are, in fact "Safe-Keeping" inmates, (Transgenders) themselves.

The defendants denial of Gender Reassignment Surgery, feminine clothing access, cosmetic access, feminine hygiene items access, along with access to Gender Dysphoria educational material — are denials that invoke the protection of the 14th Amendment ant the Right Not to be discriminated against or Sex-stereotyped for being a Transgender Woman. These are matters for a jury to consider.

## Legal Claim Eleven

The defendants discriminate against the plaintiff by refusing to pay for Gender Reassignment Surgery when there is no medical reason to withhold such treatment —and when no other reason could ever justify such denial. (Discovery Item).

Non-Transgender Women get the surgeries they need. The plaintiff got thyroid surgery when it was needed; yet, once the plaintiff was diagnosed as a Transgender Woman needing Gender Reassignment

Surgery then suddenly the plaintiff is told that TDCJ will not pay for it, while they hide behind false "security concerns" in order to not pay.

Surgery for non-Transgender woman is paid for to cure any and all their ailments as is needed. Likewise for hetro-sexual males. Denying that Equal treatment to a Transgender woman because of her status as a Transgender woman invokes the 14th Amendment of the United States Constitution for discrimination and sex-stereotyping.

The plaintiff is Pro Se and asks for a liberal reading. Discovery process will determine where the responsibility for this discrimination and sex-stereotyping is coming from. Either the defendants are in the crosshairs of a 14th Amendment violation for delay of medical services, or TDCJ is in violation over money. Discovery will prove either, one party or the other.

## Legal Claim Twelve

The plaintiff is discriminated by the defendants by not being offered outside consultant for Gender Reassignment Surgery (Discovery Item).

The defendants are Medical Contractors. They are, in fact, capable of bringing in outside Medical Doctors to fulfill policy

G-51.11 with attachments.

The 14th Amendment is invoked for discrimination against the plaintiff for not contracting to cure Gender Dysphoria, when other offenders (all except Transgenders) get outside Medical Contractors to cure their disorders.

## Legal Claim Thirteen

The defendants discriminate against the plaintiff by not providing, on the local level, a team where the plaintiff may go to and actually receive the items that have been prescribed.

The plaintiff is being misdirected by the defendants who send the plaintiff to departments in TDCJ security to obtain items that do not exist in those departments because those departments have nothing to do with the medical items prescribed.

Case in point; The plaintiff was sent to "Laundry" to obtain: a long hair pass, panties, Bra's. On the following page, I will include an I-60 request form which I sent to the "Laundry" to follow-up on directions given to me by "Medical" in order to obtain my prescription.

The defendants are discriminating by providing a disconnected Medical Service which they delay, forcing the plaintiff

to ask for an outside agency/organization to make sense of just what the defendants are doing.

Cisgender women are not having problems receiving Bra's, Panties, Long-hair passes, cosmetics, hygiene items for feminine care etc... The defendants are a Mega-Organization. They understand structure and organization; but when the needs of the plaintiff (a Transgender Woman) are unmet and medical prescriptions unfulfilled — because she is a Transgender woman — then discrimination and sex-stereotyping takes place, invoking the 14th Amendment of the United States Constitution.

Below is the I-60 Request form which is mentioned on the immediate previous page. (3rd para. of Legal Claim 13), Next page – self-explanatory.

SUBJECT: *State briefly the problem on which you desire assistance.*

Hi, I'm a transgender, Prescribe a Bra/Panties. UTMB says I have to contact your office for these items to be issued to me.

Need a Hygiene to discuss sizes.

Name: Hauerkitup, Ms Bobbie David   No: 702013   Unit: Stiles
Living Quarters: 73A-18B   Work Assignment: Unassign Medical

DISPOSITION: (Inmate will not write in this space) At this time the laundry dept does not issue bras.

M. Gundup

29