IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| BOBBIE LEE HAVERKAMP AKA § <br> DAVID ALAN HAVERKAMP #702013 § <br> § <br> STILES UNIT, BEAUMONT, TEXAS § <br> § <br> v. § <br> § <br> JOHN DOE UTMB MEDICAL, AUSTIN, § <br> TEXAS, JANE DOE UTMB MEDICAL, § <br> AUSTIN, TEXAS, JOHN & JANE DOE § <br> UTMB MENTAL HEALTH, AUSTIN § <br> TEXAS § | Case No. 2:17-CV-18 |

## MOTION TO DISMISS

Defendants Ben Raimer, M.D., Lannette Linthicum, M.D., Owen Murray, D.O., Cynthia Jumper, M.D., F. Parker Hudson, M.D., Joseph Penn, M.D., and John Mills, D.O. (collectively "Defendants") respectfully file this Motion to Dismiss the Amended Complaint, Doc. 62 filed by Plaintiff David Alan Haverkamp, inmate no. 702013 ("Plaintiff" or "Haverkamp"). Defendants respectfully show the following:

**Procedural History**

On or about January 13, 2017, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this lawsuit pursuant to 42 U.S.C. § 1983, originally designating Dr. Joseph Penn and Dr. Lannette Linthicum, among others, as Defendants. Doc. 9. On August 24, 2017, the Court stayed all discovery in the case until the Fifth Circuit Court of Appeals issued a decision in *Gibson v. Collier*, No. 16-51148 (5th Cir. filed Sept. 12, 2016). Doc. 60.

On February 28, 2018, the Court recognized that Dr. Owen Murray and the other members of the Correctional Managed Health Care Committee ("CMHCC") were the proper Defendants in this matter. *See* Doc. 73 at 1. In the same order, the Court summarized Plaintiff's

1

requested relief as injunctive only. *See* Doc. 73 at 4. Plaintiff does not plead for damages in the live complaint. Doc. 62 at 8–11 (describing each form of relief requested).

At the Court's direction, on March 19, 2018, Defendants' counsel filed an Advisory listing ten (10) CMHCC principal committee members as the putative Defendants. Doc. 71. Dr. Raimer was among the ten (10) Defendants listed in this Advisory.

The Court entered an Order on March 29, 2018, directing the Office of Attorney General of Texas to obtain authority to represent these Defendants within forty-five (45) days, or to file the addresses of these Defendants under seal. Doc. 73, at 2. The Court also ordered the ten (10) Defendants identified in the Advisory to file their answer within forty-five (45) days after the Fifth Circuit issues its decision in *Gibson v. Collier,* and after the Court lifted it stay. Doc. 73, at 3.

On September 11, 2018, the Court entered an Order directing that Dr. Ben Raimer also be served process in this case. Doc. 79, at 1. The Court issued an order on October 18, 2018 directing that, like other Defendants, Dr. Raimer should file an answer or otherwise plead within forty-five (45) days after the Fifth Circuit issued its opinion in *Gibson v. Collier*, No. 16-51148 (5th Cir. filed Sept. 12, 2016). Doc. 83.

The Fifth Circuit issued its opinion in *Gibson v. Collier* on March 29, 2019. *See Gibson v. Collier,* 920 F.3d 212 (5th Cir. 2019).[1] On May 23, 2019, the Court entered its Order Vacating

---

[1] At issue in *Gibson* was whether the denial of sex re-assignment surgery to a transgender inmate constitutes a violation of the Eighth Amendment's proscription on cruel and unusual punishment. *See Gibson v. Collier,* 920 F.3d 212, 215 (5th Cir. 2019). Agreeing with the First Circuit in *Kosilek v. Spencer,* 774 F.3d 63, 76-78, 87-89, 96 (1st Cir. 2014) (en banc), the Fifth Circuit held that a "state does not inflict cruel and unusual punishment by declining to provide sex reassignment surgery to a transgender inmate." 920 F.3d at 215. Key excerpts from the Fifth Circuit's decision in *Gibson* follow:
> Under established precedent, it can be cruel and unusual punishment to deny essential medical care to an inmate. But that does not mean prisons must provide whatever care an inmate wants. Rather, the Eighth Amendment "proscribes only medical care so

Stay and Setting Deadlines.  Doc. 88.  This Order then directed the Defendants to file an answer or otherwise plead by June 13, 2019.  *Id.*  Defendants accordingly file this Motion to Dismiss.

## Summary of Argument

Plaintiff's claim should be dismissed for the following reasons:

- Plaintiff fails to state a claim for violation of the Equal Protection Clause.  Equal Protection requires that similarly situated persons should be treated alike.  Here, the Plaintiff, a biological male who identifies as female, complains that the members of the CMHCC treat the Plaintiff differently than cisgender women.  Plaintiff does not complain that the Plaintiff is treated differently than other biological males or other biological males who, like Plaintiff, identify as female.

---

unconscionable as to fall below society's minimum standards of decency."  *Id.* at 96 (citing *Estelle v. Gamble*, 429 U.S. 97, 102–5, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).  Accordingly, "mere disagreement with one's medical treatment is insufficient" to state a claim under the Eighth Amendment.  *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018).  This bedrock principle dooms this case.  For it is indisputable that the necessity and efficacy of sex reassignment surgery is a matter of significant disagreement within the medical community.  As the First Circuit has noted ... respected medical experts fiercely question whether sex reassignment surgery, rather than counseling and hormone therapy, is the best treatment for gender dysphoria.  *See Kosilek*, 774 F.3d at 76–78, 87 (surveying conflicting testimony concerning medical efficacy and necessity of sex reassignment surgery).

What's more, not only do respected medical experts disagree with sex reassignment surgery—so do prisons across the country.  That undisputed fact reveals yet another fatal defect in this case.  For it cannot be cruel *and unusual* to deny treatment that no other prison has ever provided—to the contrary, it would only be unusual if a prison decided *not* to deny such treatment.

The dissent correctly observes that no evaluation for sex reassignment surgery was ever provided in this case, because Texas prison policy does not authorize such treatment in the first place.  The dissent suggests that a blanket ban is unconstitutional—and that an individualized assessment is required.  But that defies common sense.  To use an analogy: If the FDA prohibits a particular drug, surely the Eighth Amendment does not require an individualized assessment for any inmate who requests that drug.  The dissent's view also conflicts with *Kosilek*—as both the dissent in *Kosilek* and counsel here acknowledge, the majority in *Kosilek* effectively allowed a blanket ban on sex reassignment surgery.

    ... . We affirm [the District Court's decision].

*Gibson,* 920 F.3d at 216.

Though making an allegation that Defendants' denial of "proper consultation for gender dysphoria and gender reassignment surgery" constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, Doc. 62 at 18, Plaintiff does not allege appear to allege any violations of the Eighth Amendment.  Plaintiff may be aware that *Gibson* would not bode well for any Eighth Amendment claims that Plaintiff otherwise might bring, as Plaintiff's communications with the Court emphasize that his case is different from *Gibson. See, e.g.,* Doc. 53 at 6 (Plaintiff asserting that "Gibson claimed he is entitled to gender reassignment surgery and it violates his 8th and 14th Amendment rights.  Haverkamp['s] claims are discrimination and sex-stereotyping.")

> Because Plaintiff is not similarly situated to the prisoners used as the basis of comparison, the Equal Protection claim fails.

- Plaintiff does not assert a claim for violation of the Eighth Amendment. But to any extent Plaintiff sought to assert and Eighth Amendment claim, the Fifth Circuit's recent decision in would require its dismissal.

- The Eleventh Amendment bars Plaintiff's claims because Plaintiff sues the Defendants in their official capacities, such that Plaintiff's suit is, at bottom, an action against an arm of the State of Texas. Because Plaintiff fails to plead facts sufficient to demonstrate a continuing constitutional violation, the Ex Parte Young exception to Eleventh Amendment Immunity does not apply.

**Facts**

Plaintiff Haverkamp is an inmate at the Stiles Unit of the Texas Department of Criminal Justice ("TDCJ") men's prison located in Jefferson County, Texas. Plaintiff is currently serving a forty (40) year sentence for aggravated sexual assault.

As noted, Defendants are members of CMHC committee ("CMHCC"). The CMHCC is a statutorily-created arm of the State of Texas. It is made up of members employed by TDCJ, UTMB, Texas Tech University Health Science Center, employees of other medical schools, and members of the public that are appointed by the governor. *See* Tex. Gov't Code § 501.133. Members serve without compensation. *Id*. at § 501.141. Expenditures made by the CMHCC come from TDCJ's budget; this budget is determined and appropriated by the State Legislature. *Id*. at § 501.142. The CMHCC's function is to "develop and approve a managed health care plan for all persons confined by the department that: (1) specifies the types and general level of care to be provided to persons confined by the department; and (2) ensures continued access to needed care in the correctional health care system." *Id*. at § 501.146. Members of the CMHCC do not provide medical care within prison facilities, and do not provide specific courses of medical treatment. All medical care within TDCJ prison facilities is provided by medical providers employed by either UTMB or Texas Tech Health Science Center.

Plaintiff Haverkamp is a biological male who identifies as a transgender woman. *See* Doc. 62, at 4 (alleging the Defendants discriminate against the Plaintiff "because she is a transgender woman"). Plaintiff's *pro se* Amended Complaint is filed under 42 U.S.C. § 1983, and purports to set out thirteen (13) different "claims" or causes of action. Doc. 64, at 15-36. Each of the purported claims is a set of alleged facts, or alleged acts or omissions, which the Plaintiff asserts constitute violations of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. As the Court previously noted, Plaintiff "only seeks injunctive relief in this case." Doc. 70, at 2.[2] A number of the Plaintiff's purported claims appear duplicative.[3]

Plaintiff purported claims may be summarized as follows:

- **Claim 1:**     Plaintiff alleges Defendants allow cisgender[4] women possession of non-expensive or non-narcotic medication on a "KOP" (keep on person) basis, whereas Defendants discriminate against the Plaintiff "by making her get fully dressed, go outside the building in the weather [and] stand in line at 2:30 a.m." to obtain an Estadroil pill for hormone therapy. Doc. 62, at 16. Plaintiff also alleges that Plaintiff was "forced to switch to hormone shots," while a "non-transgender woman" obtains "application of Estradoil in pill form." Doc. 62, at 16. Plaintiff alleges this type of treatment gives rise to an "Equal Protection" claim and that Defendants' conduct violates the "14th Amendment." *Id.*

---

[2] This Motion is directed at the Court's assessment of Plaintiff's *pro se* claims. To any extent it may later be determined that Plaintiff asserts any type of claim or cause of action other than claims for injunctive relief, Defendants request the opportunity to address those claims at that time.

[3] The Court aptly summarized and condensed the Plaintiff's purported claims in its Order of February 28, 2018, observing:

> Plaintiff seeks relief as follows: (1) gender reassignment surgery in accordance with the applicable policy; (2) replacement or higher estrogen for at least one year; (3) a standard of care and treatment plan acceptable to the medical community and tailored to Plaintiff's request for gender reassignment surgery; (4) an experienced psychiatric doctor in treating gender dysphoria; (5) proper clothing, cosmetics, and hygiene items for a female; (6) medical care that can bring Plaintiff's skin characteristics in line with her female identity; (7) a medical pass for Plaintiff to grow her hair to standard female length; (8) a coordinator to bring this case to a close; and (9) educational material on gender dysphoria as referenced "in WPATH standard of care."

Doc. 70, at 3.

[4] Cisgender is defined as "being a person whose gender identity corresponds with the sex the person … was identified as having at birth." *See* Cisgender, https://www.merriam-webster.com/dictionary/cisgender.

- **Claim 2:** Plaintiff alleges that a standard of care applies to medical treatments rendered to a "non-transgender woman." Doc. 62, at 17. Plaintiff alleges that the Fourteenth Amendment is violated because Defendants refuse to apply the same standard of care to Plaintiff by devising a "treatment plan to treat and cure [the] gender dysphoria" that Plaintiff experiences "as a transgender woman." Doc. 62, at 17.

- **Claim 3:** Plaintiff alleges that Defendants denied Plaintiff "proper consultation for gender dysphoria and gender reassignment surgery … while a cisgender woman in similar circumstances [would] have full access to specialized consultation for [her] surgery." Doc. 62, at 18. For example, Plaintiff alleges "defendants allow the treatment for non-transgender women inmates with certain conditions such as cystocele." *Id.* Plaintiff alleges that this different treatment as between transgender and cisgender women deprives "plaintiff of her right to equal protections of the laws guaranteed by the 14th Amendment." *Id.* at 20.

- **Claim 4:** Plaintiff alleges that Defendants deny Plaintiff access to clothing, cosmetics and hygiene products which "are approved for cisgender women" but "denied to transgender women simply because they are 'male' at birth." Doc. 62, at 21. This conduct allegedly deprived Plaintiff of the "14th amendment right to equal protection." *Id.* at 21.

- **Claim 5:** Plaintiff alleges the Defendants allow a "non-transgender woman [to] have vaginoplasty[5] surgery anytime," but discriminate against Plaintiff by not allowing Haverkamp to also have a vaginoplasty procedure. Doc. 62, at 24. Plaintiff alleges that Plaintiff's "rights under the 14th Amendment and Equal Rights are violated." *Id.*

- **Claim 6:** Plaintiff alleges that Defendants discriminate against the Plaintiff "by refusing to provide the total care and cure for gender dysphoria." Doc. 62, at 25. Specifically, Plaintiff alleges that "defendants provide vaginoplasty surgery to cisgender women for their medical care but refuse that same surgery treatment for this transgender woman." *Id.* Plaintiff alleges Plaintiff is deprived of "her right to Equal Protection of the laws guaranteed by the 14th Amendment." *Id.* at 26.

- **Claim 7:** This claim essentially repeats the allegations in Claim 5. Plaintiff alleges that "non-transgender women are allowed to complete vaginoplasty surgery," but Plaintiff is not also allowed to have this procedure because Plaintiff is a transgender woman. Doc. 62, at 29. Plaintiff alleges this denial of vaginoplasty surgery violated Plaintiff's rights under the 14th Amendment." *Id.*

- **Claim 8:** Plaintiff alleges that "non-transgender women have access to mental health care that addresses problems with gender, but the Plaintiff, because Plaintiff is a transgender woman, is denied" appropriate mental health care for Plaintiff's gender dysphoria. Doc. 62, at 30. Again, Plaintiff alleges that Defendants deprived Plaintiff "of

---

[5] Vaginoplasty is defined as "plastic surgery of the vagina." *See* Vaginoplasty, https://www.merriam-webster.com/medical/vaginoplasty.

her right to equal protection of laws" and violates "plaintiff's rights" under "the 14th Amendment." *Id.* at 30-31.

- **Claim 9:** Plaintiff alleges that Defendants discriminate against Plaintiff by refusing "to provide educational materials that will help the Plaintiff understand changes in her body," while "cisgender women understand what's happening to their bodies" and the "plaintiff should enjoy the same right under the 14th Amendment." Doc. 62, at 32.

- **Claim 10:** Plaintiff's allegations consolidate allegations already set out in Claims 4 and 9. Specifically, Plaintiff alleges the "defendants' denial of gender reassignment surgery, feminine clothing access, cosmetic access, feminine hygiene items access, along with access to gender dysphoria education material[s]" violates the Fourteenth Amendment. Doc. 62, at 34.

- **Claim 11:** Plaintiff alleges the "defendants discriminate against the Plaintiff by refusing to pay for gender reassignment surgery when there is no medical reason to withhold such treatment – and when … non-transgender women get the surgeries they need." Doc. 62, at 34. Plaintiff alleges that this conduct denies "equal treatment to a transgender woman" and is a "14th Amendment violation.**"** *Id.* at 35.

- **Claim 12:** Plaintiff alleges that Plaintiff is discriminated against because Plaintiff is "not being offered [an] outside consultant for gender reassignment surgery" when "other offenders (all except transgenders) get outside medical contractors." Doc. 62, at 36. This failure to provide outside consultants allegedly violates the 14th Amendment's Equal Protection Clause. *See id.*

- **Claim 13:** Plaintiff alleges that "cisgender women are not having problems receiving bras, panties, long hair passes, cosmetics, hygiene items for feminine care" while Plaintiff as a "transgender woman" does not have like access to these items. Doc. 62, at 37. Again, Plaintiff alleges this conduct violates the "14th Amendment," presumably the Equal Protection Clause. *Id.*

### Standard of Review

Rule 12(b)(6) allows a defendant to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a Rule 12(b)(6) motion "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Beaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). However, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise

7

a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation and quotation marks omitted). As the Supreme Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

Rule 12(b)(1) motions "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S. Ct. 1235, 163 L.Ed.2d 1097 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

**Analysis**

The theory underlying all of Plaintiff's claims is that the Defendants violated the Equal Protection Clause of the Fourteenth Amendment. According to Plaintiff, these violations occurred because Defendants treat or treated Plaintiff, a transgender woman (or a biological male who identifies as female) differently from non-transgender, or cisgender, females (biological women who identify as women). *See, e.g.,* Doc. 62 at 4 (setting out Plaintiff's "short and plain statement of the facts [Haverkamp's] case" as the Defendants "discriminate against the Plaintiff because she is a transgender woman and will not allow the same treatment as [Defendants allow] a cisgender woman.").

**I.     Plaintiff fails to state a 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment.**

Section 1983 does not convey substantive rights on its own, but rather provides a vehicle by which a plaintiff may sue for deprivation of rights guaranteed under the Constitution or laws of the United States. *Albright v. Oliver,* 510 U.S. 266, 271 (1994); *Young v. City of Killeen,* 775 F.2d 1349, 1352 (5th Cir.1985). To prevail on a section 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Priester v. Lowndes County,* 354 F.3d 414, 420 (5th Cir.), *cert. denied,* 543 U.S. 829 (2004).

Cases addressing the type of allegation that Plaintiff Haverkamp makes here, *i.e.,* that Defendants violate the Equal Protection Clause of the Fourteenth Amendment by treating Plaintiff, a trans-gender woman, differently than Defendants treat cisgender or non-transgender women, are few in number. However, the available case law shows that Plaintiff cannot state a claim for violation of the Equal Protection Clause.

The court in *Williams v. Kelly,* for example, noted that the plaintiff alleged "that prison policies that disparately harm transgender people by failing to provide medical care to transgender prisoners when cisgender prisoners have access" should "be struck down under equal protection." No. 17-12993, 2018 WL 4403381, *12 (E.D. La. Aug. 27, 2018), *appeal filed* No. 18-31066 (5th Cir. Oct. 1, 2018). Rejecting this position, the court in *Williams* reasoned that the "problem with such [a] claim is that it simply does not fit within an equal protection analysis." *Id.* at *12. The *Williams* court noted the Fifth Circuit has stated that the Equal Protection Clause of the Fourteenth Amendment is essentially a "direction that all persons *similarly situated* should be treated alike. Its basics are rote: *equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance for the purpose for which the classification is made*." 2018 WL 4403381, at *12 (emphasis original) (quoting *Wood v. Collier*, 836 F.3d 534, 538-39 (5th Cir. 2016)).

Consistent with this rule, the court in *Williams* observed that "it appears that plaintiff's claim is that, because cisgender female inmates are provided vaginal surgeries in some instances, the refusal to provide her, a transgender female sex reassignment surgery violates the Equal Protection Clause. If that is indeed her claim, it has no merit." 2018 WL 4403381, at *12 (footnote omitted). This result was required because "plaintiff is not alleging that she is being treated differently than other prisoners suffering from gender dysphoria. Her complaint is that she, a transgender inmate, is being denied sex reassignment surgery, while cisgender female inmates ... are provided with surgical treatments for their condition." 2018 WL 4403381 at *12. Hence, "because plaintiff is not 'similarly situated' to the prisoners she used as a basis of comparison, her equal protection claim necessarily fails." *Id.*

The court in *Williams* quoted an opinion from the Western District of Wisconsin in support of its reasoning. The Wisconsin federal court stated:

> [P]laintiff pursues two theories of discrimination. First, she contends that she is biological male, that she is otherwise similarly situated to biological females, and that the [Department of Corrections] policy denies medically necessary vaginoplasty to biological males, but not biological females. Second, she contends that she is a transgender inmate, that she is otherwise similarly situated to cisgender inmates, and that the [Department of Corrections] policy denies medically necessary vaginoplasty to transgender inmates but not cisgender inmates.
> ….
>
> "[The Supreme] Court has consistently upheld statutes where gender classification is not invidious but realistically reflects the fact that the sexes are not similarly situated in certain circumstances." *Michael M. v. Superior Court*, 450 U.S. 464, 469 (1981). This is one such circumstance … . The biological female already has a vagina; the biological male doesn't. The government has an interest in ensuring that inmates receive appropriate, effective medical treatment. *Employing different decision-making policies for different types of medical procedures does not violate the Equal Protection Clause.*

2018 WL 4403381, at *12-13 (emphasis added) (quoting *Campbell v. Kallas*, No. 16-CV-261, 2018 WL 2089351, at *10 (W.D. Wis. May 4, 2018)), *appeal filed,* No. 18-2075 (7th Cir. May 11, 2018).

The court's determination in *Campbell* is wholly consistent with Fifth Circuit precedent. *See, e.g., Cunningham v. Beavers,* 858 F.2d 269, 272 (5th Cir. 1988) ("The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike; it does not require classes of people different in fact or opinion to be treated in law as though they were the same.").

The same reasoning in *Williams* and *Campbell* should apply here. Plaintiff's claims all have their origin in Haverkamp's allegation that Defendants treat the Plaintiff, a transgender woman inmate, differently than Defendants treat cisgender women inmates. *See, e.g.,* Doc 62, at 18 (Defendants denied Haverkamp "proper consultation for gender dysphoria and gender reassignment surgery … while a cisgender woman in similar circumstances [would] have full

access to specialized consultation for [her] surgery."); *id.* at 21 (Defendants deny Haverkamp access to clothing, cosmetics and hygiene products which "are approved for cisgender women" but "denied to transgender women simply because they are 'male' at birth."); *id.* at 34 ("defendants' denial of gender reassignment surgery, feminine clothing access, cosmetic access, [and] feminine hygiene items access" to Plaintiff violates the Fourteenth Amendment). Plaintiff does not complain that Plaintiff is treated differently than biological males or than biological males who, like Plaintiff, identify as female. Rather, Plaintiff complains that Plaintiff, as a biological male who identifies as female, is treated differently than biological females who also identify as female. No equal protection claim will lie. *See Williams,* 2018 WL 4403381 at *12; *Cunningham,* 858 F.2d at 272.

## II. Any Eighth Amendment claim would be foreclosed by the Fifth Circuit's decision in *Gibson v. Collier.*

As discussed above, in a prior published opinion, the Fifth circuit concluded that a Texas prisoner has no constitutional right to sex reassignment surgery. *Gibson v. Collier,* 920 F.3d 212 (5th Cir. 2019). Specifically, in analyzing the same policies at issue here, the Fifth Circuit held, "A state does not inflict cruel and unusual punishment by declining to provide sex reassignment surgery to a transgender inmate. The only federal court of appeals to decide such a claim to date has so held as an en banc court." *Id*. at 215–16 (citing *Kosilek v. Spencer,* 774 F.3d 63, 76-78, 87-89, 96 (1st Cir. 2014) (en banc)). To any extent Haverkamp seeks to assert any claim for deliberate indifference in violation of the Eighth Amendment, that claim is now foreclosed by binding Fifth Circuit precedent.

## III. The Eleventh Amendment bars Plaintiff's claims.

Plaintiff's claims should also be dismissed for lack of jurisdiction based on Eleventh Amendment Immunity pursuant to Rule 12(b)(1).

### A. Plaintiff sues Defendants in their official capacities.

Plaintiff's Amended Complaint does not specify that Plaintiff sues the Defendants in their individual capacities. Rather, the Complaint names Defendants in their capacities as various members of the CMHCC. *See* Doc. 62 at 6. Absent an express specification otherwise, a defendant's official capacity is presumed. *E.g., Phelan v. Norville,* No. 5:10-CV-029-C, 2010 WL 11515176, *3 (N.D. Tex. Nov. 5, 2010) ("'When a plaintiff does not specify whether []he is suing a defendant in his official or individual capacity, the defendant's official capacity is presumed.'") (brackets original). Plaintiff's action thus sues Defendants in their official capacities.

### B. Plaintiff's suit is, at bottom, an action against an agency of the State of Texas.

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. II. "This language expressly encompasses only suits brought against a State by citizens of another State, but th[e Supreme] Court long ago held that the Amendment bars suits against a State by citizens of that same State as well." *Papasan v. Allain,* 478 U.S. 265, 276 (1986). Further, this bar exists whether the relief sought is legal or equitable. *Pennhurst State Sch. & Hosp. v. Haldeman,* 465 U.S. 89, 100 (1984).

As noted, the CMHCC is a statutorily-created arm of the State of Texas. Because Plaintiff sues the Defendants in their official capacities, Plaintiff's suit is really a suit by a citizen of Texas against an arm of the State, and thus against the State of Texas itself. *See, e.g., Thomas v. State,* 294 F. Supp. 3d 576, 592 (S.D. Tex. 2018) ("An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent.").

13

The Court therefore lacks subject-matter jurisdiction over the Plaintiff's claims because the claims are barred under the Eleventh Amendment. *See Pennhurst,* 465 U.S. at 100-01.

### C. Because Plaintiff fails to state a constitutional violation, the *Ex Parte Young* exception to Eleventh Amendment Immunity does not apply.

The Court in *Papasan* noted, however, that where "the state itself or one of its agencies or departments is not named as defendant and where a state official is named instead, the Eleventh Amendment status of the suit is less straightforward." *Papasan,* 478 U.S. at 276. *Ex Parte Young*, 209 U.S. 123 (1908) and its progeny permit a narrow exception to Eleventh Amendment immunity in claims against state officials for prospective injunctive relief to cure a continuing violation of federal law. *Id.* at 159–60; *see also, e.g., Green v. Mansour*, 474 U.S. 64, 68 (1985); *Edelman v. Jordan*, 415 U.S. 651, 666–68 (1974). But to bring a case within the *Ex Parte Young* exception, a plaintiff must first plead facts sufficient to state a continuing constitutional violation. *See Hall v. Texas Comm'n on Law Enforcement*, 685 Fed. App. 337, 341 (5th Cir. 2017) (per curiam) (concluding that failure to raise "a colorable constitutional claim" meant that the *Ex Parte Young* exception did not apply).

As explained above, Plaintiff fails to state a Fourteenth Amendment Equal Protection claim, or any other ongoing constitutional violation. Because Plaintiff fails to plead facts sufficient to demonstrate a continuing constitutional violation, the *Ex Parte Young* exception to Eleventh Amendment Immunity does not apply. *Id.* Defendants are accordingly entitled to Eleventh Amendment Immunity and dismissal of the claims against them pursuant to Rule 12(b)(1) and 12(b)(6).

### Conclusion and Prayer

Even if one takes the Plaintiff's pleaded facts as true, Plaintiff fails to state a constitutional claim. All of Plaintiff's claims should be dismissed for lack of subject-matter

jurisdiction based on immunity and for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defendants respectfully request that all Plaintiff's claims against them be dismissed. Defendants respectfully request all other appropriate relief.

    Respectfully submitted,

    STRAWN PICKENS L.L.P.

By:   */s/ John R. Strawn, Jr*
      John R. Strawn, Jr., #19374100
      Pennzoil Place, South Tower
      711 Louisiana, Suite 1850
      Houston, Texas 77002
      (713) 659-9600
      (713) 659-9601 Fax
      jstrawn@strawnpickens.com
      ATTORNEYS FOR DEFENDANT,
      BEN RAIMER, M.D.

OF COUNSEL:
STRAWN PICKENS L.L.P.
Andrew L. Pickens, #15971900
Pennzoil Place, South Tower
711 Louisiana, Suite 1850
Houston, Texas 77002
Tel: (713) 659-9600
Fax: (713) 659-9601
apickens@strawnpickens.com

    */s/ Heather Rhea*
    Heather Rhea
    Assistant Attorney General, State of Texas
    Texas Bar No. 24085420
    Southern District ID: 2399979
    Heather.Rhea@oag.texas.gov
    ATTORNEY FOR DEFENDANTS OWEN MURRAY, M.D., JOSEPH PENN, M.D., CYNTHIA JUMPER, M.D., F. PARKER HUDSON, M.D., AND JOHN MILLS, M.D.

*/s/ Bruce Garcia*
Bruce Garcia
Assistant Attorney General
Law Enforcement Defense Division
State Bar No. 07631060
Southern Id No. 18934
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711
512.463.2080 / 512.370.9397 (Fax)
ATTORNEYS FOR DEFENDANT LANETTE LINTHICUM, M.D.

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to Fed. R. Civ. P. 5(b), a true copy of the foregoing document was delivered by electronic mail to the Clerk of the Court and via U.S. Mail to Plaintiff David Alan Haverkamp at the address below on this 13th day of June 2019.

David Alan Haverkamp
a/k/a Bobbie Lee Haverkamp, #702013
Stiles Unit
3060 FM 3514
Beaumont, Texas 77705

*/s/ John R. Strawn, Jr.*
John R. Strawn, Jr.