IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **DAVID HAVERKAMP,** § | | |
| **TDCJ NO. 00702013,** § | | |
| Plaintiff, § | | |
| § | **Civil Action No. 2:17-CV-00018** | |
| v. § | | |
| § | **Jury Demand** | |
| **JOSEPH PENN,** *et al.*, § | | |
| Defendants. § | | |

## DEFENDANTS' JOINT MOTION TO DISMISS HAVERKAMP'S AMENDED COMPLAINT [DKT. NO. 62]

Defendants Rodney Burrow, Preston Johnson, Jr., John Burruss, Erin Wyrick, Jeffrey Beeson and Dee Budgewater, through the Attorney General for the State of Texas, and Philip Keiser M.D., through his attorney of record, jointly file this motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) in response to Haverkamp's amended complaint. Dkt. No. 62. In support of this motion, Defendants respectfully offer the following.

### PROCEDURAL HISTORY

On or about January 13, 2017, Plaintiff, proceeding pro se and in forma pauperis, filed this lawsuit pursuant to 42 U.S.C. § 1983, originally designating Dr. Joseph Penn and Dr. Lannette Linthicum, among others, as Defendants. Dkt. No. 9. On August 24, 2017, the Court stayed all discovery in the case until the Fifth Circuit Court of Appeals issued a decision in *Gibson v. Collier*, No. 16-51148 (5th Cir. filed Sept. 12, 2016). Dkt. No. 60. On February 28, 2018, the Court ruled that Dr. Owen Murray and the other members of the Correctional Managed Health Care Committee ("CMHCC") were the proper Defendants in this matter "as they appear to be in the

best position to provide Plaintiff the injunctive relief he seeks." *See* Dkt. No. 73 at 4. In the same order, the Court summarized Plaintiff's requested relief as injunctive only. *See* Dkt. No. 73 at 4. Plaintiff does not plead for damages in the live complaint. Dkt. No. 62 at 8–11 (describing each form of relief requested).

At the Court's direction, on March 19, 2018, Defendants' counsel filed an Advisory listing ten (10) CMHCC principal committee members as the putative Defendants. Dkt. No. 71. The Court entered an Order on March 29, 2018, directing the Office of Attorney General of Texas to obtain authority to represent these Defendants within forty-five (45) days, or to file the addresses of these Defendants under seal. Dkt. No. 73, at 2. The Court also ordered the ten (10) Defendants identified in the Advisory to file their answer within forty-five (45) days after the Fifth Circuit issues its decision in *Gibson v. Collier*, and after the Court lifted it stay. Dkt. No. 73 at 3.

On March 29, 2019, the Fifth Circuit issued its decision in *Gibson*. *See Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019). On May 23, 2019, the Court vacated the stay in this case and directed all Defendants, who had not previously done so, to file their answer or other responsive pleadings on or before June 13, 2019. Dkt. No. 88. On June 13, 2019, Defendants Linthicum, Murray, Jumper, Hudson, Penn, and Mills filed their Motion to Dismiss. Dkt. No. 90. The Court denied Defendants' Motion. Dkt. No. 123.

On April 17, 2020, the Court substituted out the CMHCC members no longer on the CMHCC with those newly on the committee and then ordered all remaining CMHCC Defendants that had not yet answered to answer or otherwise respond to Haverkamp's complaint no later than May 18, 2020. Dkt. No. 128. On May 4, 2020, the remaining original CMHCC defendants filed a

notice of appeal, and have subsequently asked for a stay in this case, which is still pending before the Court. Dkt. Nos. 144, 152.

Newly added Defendants Burrow, Johnson, Jr., Burruss, Wyrick, Beeson, Keiser and Budgewater now appear, in accordance with that order, and seek dismissal of Haverkamp's claims against them.

## SUMMARY OF THE ARGUMENT

Haverkamp's claims should be dismissed for the following reasons:

- CMHCC Defendants are not the proper defendants as they lack the ability to redress Haverkamp's alleged injuries.
- Alternatively, CMHCC is not a jural entity with the capacity to sue or be sued and, therefore, CMHCC defendants are improper parties on that basis as well.
- Haverkamp fails to state facts sufficient to bring an Equal Protection Clause claim regarding the denial of sexual reassignment surgery ("SRS"). Haverkamp cannot identify any similarly situated inmates that her treatment differs from as no TDCJ inmates are given SRS.
- Defendants are entitled to Eleventh Amendment immunity from this suit. The E*x Parte Young* exception does not apply because Haverkamp fails to allege the violation of a federal right.
- The PLRA only allows for narrowly-drawn injunctive relief in § 1983 suits brought by inmates. Because the relief Haverkamp seeks cannot be so narrowly drawn, the PLRA's requirements cannot be satisfied.
- This Court should decline to exercise supplemental jurisdiction over Haverkamp's claim that CMHCC Defendants have breached their contract with her because CMHC policy is not a contract with TDCJ inmates.

## STATEMENT OF THE CASE

Plaintiff David Haverkamp is an inmate at the Stiles Unit of the Texas Department of Criminal Justice ("TDCJ") men's prison located in Jefferson County, Texas. Plaintiff is currently serving a forty (40) year sentence for aggravated sexual assault. Defendants are members of the Correctional Managed Healthcare Committee ("CMHCC"). The CMHCC is a statutorily-created arm of the State of Texas. It is made up of members employed by TDCJ, University of

Texas Medical Branch ("UTMB"), Texas Tech University Health Science Center ("TTUHSC"), employees of other medical schools, and members of the public that are appointed by the governor. *See* Tex. Gov't Code § 501.133. Members serve without compensation. *Id.* at § 501.141. Expenditures made by the CMHCC come from TDCJ's budget; this budget is determined and appropriated by the State Legislature. *Id.* at § 501.142. The CMHCC's function is to "develop and approve a managed health care plan for all persons confined by the department that: (1) specifies the types and general level of care to be provided to persons confined by the department; and (2) ensures continued access to needed care in the correctional health care system." *Id.* at § 501.146. Members of the CMHCC do not provide medical care within prison facilities, and do not provide specific courses of medical treatment. All medical care within TDCJ prison facilities is provided by medical providers employed by either UTMB or Texas Tech Health Science Center.

Plaintiff Haverkamp is a biological male who identifies as a transgender woman. *See* Dkt. No. 62. Plaintiff has brought suit under 42 U.S.C. § 1983 alleging a violation of her rights under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. *Id.* In recently denying other Defendants' motion to dismiss Haverkamp's claims, this Court has allowed Haverkamp to move forward on her specific claim that the denial of sexual reassignment surgery ("SRS") violates her Equal Protection rights. Dkt. No. 123 at 3. This Court also chose to exercise supplemental jurisdiction over Haverkamp's state law contract claim. *Id.* Haverkamp "only seeks injunctive relief in this case." Dkt. No. 70 at 2.

STATEMENT OF THE ISSUES

I. Whether Defendants have the ability to redress Haverkamp's alleged injuries.

II. Whether CMHCC and its members are a jural entity with the capacity to sue and be sued.

III.     Whether Haverkamp stated facts sufficient to sustain an Equal Protection Clause claim where no other inmates are provided SRS.

IV.      Whether *Ex Parte Young* abrogates Defendants' entitlement to sovereign immunity where Haverkamp has failed to allege violation of a federal right.

V.       Whether any injunctive relief granted in this case would violate the PLRA.

VI.      Whether this court should exercise supplemental jurisdiction over Haverkamp's state law breach of contract claim which CMHC policy is not a contract made with TDCJ inmates.

**ARGUMENT**

I.     **STANDARD OF REVIEW**

**A. Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). When the court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *See Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"A motion to dismiss for lack of subject matter jurisdiction may be decided by the district court on one of three bases: the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991). When the motion challenges the facts on which jurisdiction depends, the Court has discretion to

allow affidavits, documents, and even a limited evidentiary hearing to resolve the disputed jurisdictional facts. *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Ashcroft*, 556 U.S. at 679.

When reviewing a motion to dismiss for failure to state a claim, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010).

## II. BECAUSE THE CMHCC CANNOT REDRESS HAVERKAMP'S PURPORTED INJURIES, THIS COURT LACKS STANDING OVER HAVERKAMP'S CLAIMS AGAINST DEFENDANTS; ALTERNATIVELY, THE CMHCC IS NOT A JURAL ENTITY WITH THE CAPACITY TO SUE AND BE SUED.[1]

---

[1] Defendants understand that prior counsel for a co-Defendant, Dr. Linthicum, stated back in August 2017 that CMHCC members were proper parties to this suit. *See* Dkt. No. 70 at 2. However, Defendants do not agree with this representation for the reasons explained above. Moreover, the case law has evolved in the time since that representation was made. As a sister court has recently recognized, "CMHCC is not an agency." *Sain v. Collier*, CV H-18-4412, 2019 WL 4144321, at *3 (S.D. Tex. Aug. 30, 2019), appeal dismissed, 19-20695, 2020 WL 1541991 (5th Cir. Jan. 15, 2020). Therefore, as argued here, "[a]bsent specific legislative action that explicitly confers upon CMHCC the power to sue or be sued, CMHCC lacks the requisite legal capacity and cannot be sued." *Id*. at *10.

### A. This Court lacks standing over Defendants that cannot redress Haverkamp's purported injuries.

The CMHCC is a statutorily-created advisory committee made up of members employed by TDCJ, UTMB, TTUHSC, employees of various Texas medical schools, and members of the public who are appointed by the governor. TEX. GOV'T CODE § 501.133. Members serve without compensation. *Id.* at § 501.141. The expenditures of the CMHCC come from TDCJ's budget, which is appropriated by the legislature. *Id.* at § 501.142. The role of the CMHCC is to "develop and approve a managed health care plan for all persons confined by the department that: (1) specifies the types and general level of care to be provided to persons confined by the department; and (2) ensures continued access to needed care in the correctional health care system." *Id.* at § 501.146.

The CMHCC and its officials have no authority to order, or otherwise obtain funding for, any particular medical treatment. Even if the CMHCC adopts a policy, it cannot compel the TDCJ to implement that policy. Thus the CMHCC cannot order sexual reassignment surgery for inmates. *Id.* Nor does CMHCC or its officials have authority to direct individualized treatment decisions. *Id.* (describing the role of CMHCC in developing a state-wide health care plan for all incarcerated felons). If the Court grants Haverkamp's request for an injunction, the CMHCC will not have the authority to implement it. *See Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) (to have Article III standing to seek injunctive relief, a plaintiff must show that it is likely that a favorable judicial decision will redress the injury). Because the CMHCC lacks authority to implement changes that could be directed by this Court's equitable power, this Court lacks jurisdiction over the CMHCC and its members. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir.

2001) (explaining that state officials cannot be enjoined to act in any way that is beyond their state-granted authority).

While the CMHCC does have a role in the coordination of statewide policy development[2], an injunction in this case could not extend so far as to direct CMHCC to create or change a policy. Recent Fifth Circuit case law makes the point.

In *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004), the Mississippi prison system appealed an injunction that, among other mandates, directed the prison to put a general preventative maintenance schedule and program into a written policy. *Id.* at 336. The Fifth Circuit observed that although "federal courts can certainly enter injunctions to prevent Eighth Amendment violations, they are not to micromanage state prisons." *Id* (citing *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)). The Fifth Circuit vacated the portion of the *Gates* injunction that ordered the prison to put a written policy in place, stating that while the district court could enjoin or mandate conduct, it could not order the agency to write a policy. *Id.* at 338-39.

So too here.

The alleged continuing violation that Haverkamp complains of cannot be redressed by an injunction against the CMHCC or its officials. The requested injunction would not affect the conduct of CMHCC or its officials. Instead, it would require the CMHCC to write an amended policy, which the committee would lack the power to enforce. Because such relief is beyond the ken of federal courts, Haverkamp fails to establish the element of redressability as to CMHCC, which is a necessary element to establish a case or controversy. *Okpalobi*, 244 F.3d at 425-27.

   B.  **The CMHCC and its officials lack the capacity to sue or be sued.**

---

[2] *See, e.g.* CMHCC Responsibilities, https://www.tdcj.texas.gov/divisions/cmhc/index.html (last visited on November 21, 2019).

A plaintiff may not bring a civil rights action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence.[3] *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991); *see also Barrie v. Nueces Cnty. Dist. Attorney's Office*, 753 Fed. Appx. 260, 2018 WL 5095824 (5th Cir. Oct. 17, 2018). In *Darby*, the Fifth Circuit held that "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." 939 F.2d at 313. The *Darby* court noted that the "touchstone under Texas law is whether the sued servient entity has been granted the capacity 'to sue and to be sued.'" *Id*.

Nowhere in the enabling statute does the legislature grant the CMHCC the power to sue or be sued. TEX. GOV'T CODE § 501.131-.156. Nor does the statute indicate that the CMHCC is to "enjoy a separate legal existence" from TDCJ. *Darby*, 939 F.2d at 313. When the legislature's intent is to create a jural entity with the capacity to sue or be sued, it does so explicitly. *See*, *e.g.*, TEX. GOV'T CODE § 81.014 ("The state bar may sue and be sued in its own name."; TEX. LOC. GOV'T CODE § 327.161 ("A zoo board may sue and be sued."); TEX. EDUC. CODE § 45.152(b) (stating that an athletic statement authority "may sue and be sued.").[4]

Texas Government Code § 501.147 empowers only TDCJ with the authority to contract. TEX. GOV'T CODE § 501.147(b)(5) (mandating that TDCJ shall "contract with any entity to fully

---

[3] While the first argument in this section is asserted under Rule 12(b)(1), this argument, lack of capacity to be sued, is a defense that may be raised by a defendant under Rule 9(a)(2) and asserted in a motion under Rule 12(b)(6). *See Barrie v. Nueces County District Attorney's Office*, 753 F. App'x 260, 265, 2018 WL 5095824, at *3 (5th Cir. Oct. 17, 2018) (per curiam).

[4] Other examples of statutes explicitly authorizing entities the power to sue and be sued include: TEX. AGRIC. CODE § 58.022(2) (creating the Agricultural Finance Authority and including the power "to sue and be sued"); TEX. AGRIC. CODE § 60.060(a) ("The [agricultural development] district may sue and be sued."; TEX. BUS. ORGS. CODE § 101.605(1) ("A series established under this subchapter has the power and capacity in the series' own name to: (1) sue and be sued; (2) contract."); TEX. EDUC. CODE § 22.08-App.(b) ("The trustees or common consolidated school district may sue and be sued, plead or be impleaded, in any court of Texas of proper jurisdiction."); TEX. GOV'T CODE § 1232.067(3) (specifying that the Board of the Texas Public Finance Authority "may sue and be sued").

implement the managed health care plan"). Because there is no explicit legislative action to confer the power to sue or be sued upon the CMHCC, the CMHCC Defendants cannot be sued. Haverkamp's claims against the CMHCC Defendants should be dismissed pursuant to Federal Rules of Civil Procedure 9(a) and 12(b)(6). *See Sain v. Collier*, CV H-18-4412, 2019 WL 4144321, at *10 (S.D. Tex. Aug. 30, 2019), appeal dismissed, 19-20695, 2020 WL 1541991 (5th Cir. Jan. 15, 2020) ("Absent specific legislative action that explicitly confers upon CMHCC the power to sue or be sued, CMHCC lacks the requisite legal capacity and cannot be sued.")

### III.  HAVERKAMP FAILS TO STATE FACTS SUFFICIENT TO SUPPORT A CLAIM UNDER THE EQUAL PROTECTION CLAUSE.

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Inmates are not entitled to identical treatment; under the Equal Protection Clause, the only requirement is that "a distinction made have some relevance to the purpose for which the classification is made." *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016). Where an equal protection claim does not implicate suspect classes or fundamental rights, "the appropriate standard of review is whether the difference in treatment between classes rationally furthers a legitimate state interest.'" *Id*. (citations omitted).

An equal protection claim may be brought as a "class of one" where the alleged differential treatment is not based on membership in a suspect class or the infringement of a fundamental right. *Wood*, 836 F.3d at 540. To state a claim as a class of one, the plaintiff must allege facts that demonstrate (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment. *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (2012). "Under rational basis review, differential treatment must be upheld against

equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Madriz-Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004).

Haverkamp's Equal Protection claim on the basis of denial of sexual reassignment surgery must fail at the first prong. As the Fifth Circuit has recognized, sexual reassignment surgery is not provided to any inmates in Texas.[5] *See Gibson v. Collier*, 920 F.3d 212, 227 (5th Cir. 2019), cert. denied, 140 S. Ct. 653 (2019). Thus, Haverkamp is not being treated differently from any other inmate as there are none similarly situated to her in terms of receiving the surgery she desires. The Fifth Circuit's ruling in *Muhammad v. Lynaugh* informs the proper result in this case. 966 F.2d 901, 903 (5th Cir. 1992). There, an inmate raised an equal protection claim contending that he was denied a tape player while other inmates were not. *Id*. The Fifth Circuit affirmed dismissal of this claim explaining that the inmate failed to show "a discriminatory effect among persons similarly situated," because "[a]ll of the inmates similarly situated, i.e., those housed in the Michael Unit, are not permitted to possess tape players." *Id*.

For the same reasons, Haverkamp cannot sustain an Equal Protection claim as a class of one. This is because all of the inmates similarly situated - whether that be cis-gender female inmates, male inmates, or male inmates that identify as transgender – are not provided sexual reassignment surgery. Because an allegation that she is being denied sexual reassignment surgery does not state a violation of the Equal Protection Clause, Haverkamp's suit must be dismissed.

### IV. *EX PARTE YOUNG* DOES NOT ABROGATE DEFENDANTS' ELEVENTH AMENDMENT IMMUNITY WHERE HAVERKAMP FAILS TO IDENTIFY A FEDERAL RIGHT THAT IS BEING CONTINUOUSLY VIOLATED.

---

[5] As stated earlier, it appears from the Court's order that this is the only Equal Protection Clause claim that now remains in this case. Dkt. No. 123 at 3. To the extent this is being misread and the Court has also retained Haverkamp's equal protection claims on the basis that she is being denied items that are generally given to female inmates, the same rationale still applies. Haverkamp fails to allege facts that show she is treated differently in the items she receives than other biological males or other biological males who, like Plaintiff, identify as female.

Because the Equal Protection Clause does not provide a federal right to sexual reassignment surgery, the *Ex Parte Young* exception does not apply so as to deprive Defendants of their entitlement to Eleventh Amendment immunity. On its face, the Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States." However, in *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court announced an exception to Eleventh Amendment immunity for claims for injunctive relief against individual state officials in their official capacities. In order to qualify under *Ex parte Young*, such an action must seek prospective relief against an individual in their official capacity to end a continuing violation of federal law. Individual officials may only be liable for implementing a policy that is "a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

Haverkamp fails to identify a federal law that each Defendant is continuously violating. As stated above, there is no federal law that entitles Haverkamp to sexual reassignment surgery. As there is no valid federal law alleged in Haverkamp's amended complaint, Haverkamp is not entitled to the benefits of the *Ex parte Young* exception in bringing suit against the individual Defendants in their official capacities.

To be clear, Defendants are not asking this Court to engage in a consideration of the merits of Haverkamp's amended complaint in order to determine whether the *Young* exception applies. Instead, this Court need only stay consistent with jurisprudence on the matter and engage in a "'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law." *Verizon Maryland, Inc. v. Pub. Serv. Com'n of Maryland*, 535 U.S. 635, 636 (2002). Under such an inquiry, "an allegation of an ongoing violation of federal law will be sufficient to warrant the *Ex*

*parte Young* exception," however, "[a] bare assertion of a violation of federal law is not enough..." *Rowan Court Subdivision 2013 Ltd. P'ship v. Louisiana Hous. Corp.*, 749 Fed. Appx. 234, 237 n. 11 (5th Cir. 2018). The Fifth Circuit requires at least a "colorable constitutional claim" in order for *Ex Parte Young* to permit litigation to proceed. *See Hall v. Tex. Comm'n on Law Enf't.*, 685 F. App'x 337, 341 (5th Cir. 2017) (per curiam) (concluding that *Ex parte Young* exception did not apply because plaintiff failed to raise "a colorable constitutional claim" in alleging that failure to secure employment violated his right to petition under the First Amendment); *see also Salinas v. Tex. Workforce Comm'n*, 573 F. App'x 370, 372 (5th Cir. 2014) (per curiam) ("Conclusory statements are insufficient to plead a claim, and they do not establish jurisdiction under the *Ex Parte Young* exception.").

Here, it is clear based on a "straightforward inquiry" into Haverkamp's amended complaint that no colorable federal claim exists. This Court need not consider the facts or circumstances of Haverkamp's status as transgendered, her history of medical treatment or any other aspects of the case that could be considered a part of a "merits" inquiry. Rather, all that must be answered is whether denying Haverkamp sexual reassignment surgery where such surgery is not provided to any other inmates within TDCJ, similarly situated or otherwise, violates the Equal Protection Clause. Because that answer is "no," without any need to consider the underlying facts, *Young* is inapplicable.

V. **HAVERKAMP'S DESIRED INJUNCTION WOULD VIOLATE THE PLRA.**

The Prison Litigation Reform Act (PLRA) greatly limits a court's ability to fashion injunctive relief in a suit brought by a TDCJ inmate. Before a district court can award such relief, it must find that "such relief is narrowly drawn, extends no further than necessary to correct the

violation of the Federal right, and is the least intrusive means necessary to correct the violation." 18 U.S.C. § 3626(a)(1)(A). The court must also "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id*. If, after making the necessary findings and weighing the adverse impact on the criminal justice system, the court still feels injunctive relief is required, such relief "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." *Id*.

The injunctive relief Haverkamp seeks, if granted, would violate the PLRA. Haverkamp seeks an injunctive order requiring Defendants to provide her SRS as it is provided to a similarly-situated group of inmates. Such an order is untenable for three reasons.[6] First, as explained above, there are no inmates within TDCJ that receive SRS, therefore, there can logically be no injunction that could narrowly require Defendants to provide SRS to Haverkamp in the manner it is provided to other inmates. Second, Haverkamp has no constitutional right to SRS, per *Gibson*, and, under the PLRA, inmates only "are entitled to a remedy that eliminates the *constitutional* injury." *Ball v. LeBlanc*, 792 F.3d 584, 598–99 (5th Cir. 2015). Third, an injunction to provide Haverkamp with her desired surgery, without regard to the individualized medical decisions required for such a result, would impact providers who are subcontracted to serve the offender population and their ability to perform surgeries based on sound medical judgment.

Because an injunction that mandates Defendants provide Haverkamp with SRS would be impermissible under the PLRA, and this is the only relief Haverkamp seeks, dismissal of this suit is appropriate.

## VI. THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER HAVERKAMP'S STATE LAW BREACH OF CONTRACT CLAIM.

---

[6] This is in addition to the reason explained above in Section II, A – that Defendants would not be able to provide the relief any such injunctive order would mandate.

"A district court may decline to exercise supplemental jurisdiction if: the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because Haverkamp lacks standing to sue Defendants, this Court need not exercise supplemental jurisdiction over Haverkamp's state law claim that Defendants breached a contract with her.

Moreover, Haverkamp's breach of contract claim has no basis in fact or law. Haverkamp argues that CMHC Policy G-51.11 constitutes a contract wherein Defendants have obligated themselves to provide her SRS. Dkt. No. 62 at 26-27. As "[t]he existence of a valid contract" is the first prong that must be established in making a breach of contract claim; Haverkamp's claim immediately fails. *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 700 (S.D. Tex. 2011). Simply put, CMHC policy is not a contract with TDCJ inmates.

## CONCLUSION

Defendants Keiser, Burrow, Johnson, Jr., Burruss, Wyrick, Beeson and Budgewater respectfully request this Court dismiss Haverkamp's claims against them with prejudice.

Respectfully Submitted.

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**RYAN L. BANGERT**
Deputy First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

/s/ Courtney Corbello
**COURTNEY CORBELLO**
Assistant Attorney General
Texas State Bar No. 24097533
Southern District ID No. 3089117
courtney.corbello@oag.texas.gov
**ATTORNEYS FOR DEFENDANTS**

**OFFICE OF THE ATTORNEY GENERAL**
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / (512) 370-9410 (Fax)

STRAWN PICKENS LLP
/s/ John R. Strawn, Jr
John R. Strawn, Jr., #19374100
Pennzoil Place, South Tower
711 Louisiana, Suite 1850
Houston, Texas 77002
(713) 659-9600/(713) 659-9601 Fax
jstrawn@strawnpickens.com
ATTORNEYS FOR DEFENDANT,
PHILIP KEISER, M.D.

## NOTICE OF ELECTRONIC FILING

I, **COURTNEY CORBELLO**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Southern District of Texas, on May 18, 2020.

/s/ Courtney Corbello
**COURTNEY CORBELLO**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **Courtney Corbello**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and forgoing has been served via US Postal Service, postage prepaid, certified mail, return receipt requested, on May 18, 2020, addressed to:

David Alan Haverkamp
a/k/a Bobbie Lee Haverkamp, #702013
Stiles Unit
3060 FM 3514
Beaumont, Texas 77705

                                      */s/ Courtney Corbello*
                                      **Courtney Corbello**
                                      Assistant Attorney General