UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DAVID ALLEN HAVERKAMP; aka | § | |
| HAVERKAMP, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-18 |
| | § | |
| JOSEPH  PENN, *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Plaintiff,[1] proceeding *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.   Plaintiff complains in this action that she is discriminated against because she has been diagnosed with a gender identity disorder, but medical officials are refusing to provide gender reassignment surgery. (D.E. 1).

Pending before the Court are the following motions: (1) Motion to Stay filed by Defendants Penn, Linthicum, Jumper, Hudson, and Keiser (MTS Defendants) (D.E. 152); (2) Motion to Dismiss filed by Defendants Burrow, Johnson, Burruss, Wyrick, Beeson, and Budgewater (MTD Defendants) (D.E. 158); and (3) Plaintiff's Motion to Dismiss Defendants (D.E. 195).   For the reasons discussed below, the undersigned respectfully recommends that the Court deny the MTD Defendants' Motion to Dismiss, deny the Motion to Stay without prejudice to renew, and deny Plaintiff's Motion to Dismiss Defendants (D.E. 195) without prejudice to renew.

---

[1] Plaintiff requests that the Court utilize feminine pronouns when referring to Plaintiff.  (D.E. 2, p. 1).  The undersigned, therefore, will refer to Plaintiff in this Memorandum and recommendation as her preferred gender of female, using feminine pronouns.

# I.  JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

# II.  BACKGROUND

Plaintiff is an inmate incarcerated at the Stiles Unit of the Texas Department of Criminal Justice, Criminal Institutions Division in Beaumont, Texas.  In her civil rights action, Plaintiff asserts violations of her constitutional rights based on the failure of the TDCJ to provide her with gender reassignment surgery for her gender dysphoria[2] or Gender Identity Disorder (GID). (D.E. 2, p. 17). Plaintiff originally named Dr. Joseph Penn and Dr. Lannette Linthicum as defendants in their individual and official capacities. (D.E. 2, pp. 2-3**).**  Plaintiff seeks an injunction ordering Defendants to provide her with gender reassignment surgery and a declaratory judgment affirming her rights to necessary treatment and care. (D.E. 2, pp. 1, 17).

On August 23, 2017, Magistrate Judge B. Janice Ellington conducted a telephone conference with Plaintiff and each defendant's counsel.  Prior to the telephone conference, the parties had filed numerous motions with the Court. Magistrate Judge Ellington considered argument on Defendants' motion to stay this case pending the resolution of a case containing similar issues on appeal before the Fifth Circuit Court of Appeals, *Gibson v. Collier*, No. 16- 51148 (5th Cir. filed Sep. 12, 2016).  At the hearing, Magistrate Judge Ellington concluded that it was appropriate to grant Defendants' motion in part.  The parties did not object at the hearing to her determination to deny the

---

[2] Gender dysphoria "refers to the distress that may accompany the incongruence between one's experienced or expressed gender and one's assigned gender."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manuel of Mental Disorders* 451 (5th ed. 2013).

remaining pending motions without prejudice to renew either after *Gibson* is decided or at any other time the undersigned determines to lift the stay.

During the hearing, Magistrate Judge Ellington raised the issue as to whether the proper defendants have been named in this case. Counsel for Defendant Linthicum, Celamaine Cunniff, stated that Dr. Penn is not an appropriate party in this case and that the appropriate defendants in this case hinge on the type of relief sought by Plaintiff. Ms. Cunniff further stated that: (1) in the event Plaintiff only seeks gender reassignment surgery, the appropriate defendant would be Dr. Owen Murray from the University of Texas Medical Branch (UTMB); and (2) if Plaintiff seeks a policy change or a new policy regarding care for transgender inmates, the appropriate defendants would be the principal members of the Correctional Managed Health Care (CMHC) committee.

Given the information provided by Ms. Cunniff, Magistrate Judge Ellington proposed that Plaintiff name Dr. Murray and each of the CMHC principal committee members in their official capacities as Plaintiff only seeks injunctive relief in this case. Ms. Cunniff then requested an opportunity to gather the names of the CMHC principal committee members in order to file an advisory with the Court. Magistrate Judge Ellington ultimately directed Plaintiff to file an amended complaint that clearly details who Plaintiff is suing, what the claims are, and the relief Plaintiff seeks in this case. Magistrate Judge Ellington allowed Plaintiff to name the defendants as John and Jane Does, which would allow the Court to ascertain the precise parties at a later date through an advisory filed by Defendants' counsel.

On August 24, 2017, Magistrate Judge Ellington entered a written order to

memorialize the rulings from the telephone conference. (D.E. 60). Specifically, Magistrate Judge Ellington: (1) granted Defendants' motion to stay in part by staying the case, including all discovery matter, until the Fifth Circuit issued its decision in *Gibson*; (2) denied the motion to stay in part to the extent that Plaintiff was directed to file an amended complaint within sixty days; and (3) denied all remaining motions without prejudice to renew either after *Gibson* is decided3 or at any other time the undersigned decides to lift the stay. (D.E. 60).

Plaintiff filed her amended complaint on October 5, 2017, naming several John and Jane Does as defendants. (D.E. 62, p. 3). By Order entered on February 28, 2018, Magistrate Judge Ellington directed counsel for Defendants to file an advisory listing each of the CMHCC principal committee members as defendants. (D.E. 70, p. 4). On March 19, 2018, counsel for Defendants filed their Advisory listing ten CMHCC principal committee members as defendants including Dr. Linthicum. (D.E. 71). Magistrate Judge Ellington ordered Dr. Murray and the nine new defendants to file their answer or otherwise plead within forty-five days after he Fifth Circuit issued its decision in *Gibson*. (D.E. 73). On September 11, 2018, Magistrate Judge Ellington ordered Dr. Raimer to be served in this case. (D.E. 79). Like the other named defendants, Dr. Raimer was directed to answer or otherwise plead within forty-five days after the Court issued its *Gibson* decision. (D.E. 83).

On March 29, 2019, the Fifth Circuit issued its decision in *Gibson*. *See Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019). On May 23, 2019, Magistrate Judge Ellington vacated the stay in this case and directed all Defendants, who had not previously done so,

to file their answer or other responsive pleadings on or before June 13, 2019. (D.E. 88).

On June 13, 2019, Defendants Linthicum, Murray, Jumper, Hudson, Penn, and Mills filed their motion to dismiss. (D.E. 90). On November 19, 2019, Magistrate Judge Ellington recommended in the M&R that the Motion to Dismiss be granted, that Plaintiff's equal protection claims be dismissed with prejudice for failure to state a claim for relief, that the Court decline supplemental jurisdiction with respect to Plaintiff's state law claim for breach of contract, and that the state law claim be dismissed without prejudice to being raised in state court. (D.E. 99).

When issuing the M&R, Magistrate Judge Ellington inadvertently omitted Dr. Raimer as one of the defendants who had joined in the Motion to Dismiss. Defendants moved the Court to include Defendants Raimer, de la Garza-Graham, Griffin, Berenzweig, Linder, and Gray within the scope and effect of the M&R. (D.E. 101). They also asserted that Dr. Raimer, who had joined in the motion to dismiss, should be included within the scope and effect of the M&R. (D.E. 101).

On January 17, 2020, the undersigned issued an Amended Memorandum and Recommendation (AM&R), recommending that: (1) Defendant Raimer be included within the scope and effect of the M&R since he had joined in the motion to dismiss; (2) pursuant to 28 U.S.C. § 1915(e)(2)(B), Plaintiff's equal protection claim against Defendants de la Garza, Griffin, Berenzweig, Linder, and Gary be dismissed with prejudice; and (3) the Court decline to exercise supplemental jurisdiction with respect to Plaintiff's state law claim for breach of contract against these defendants. (D.E. 106).

On April 3, 2020, Senior District Judge Hilda G. Tagle declined to adopt the M&R

and denied the motion to dismiss. (D.E. 123). Because the Court retained Plaintiff's equal protection claims, it exercised supplemental jurisdiction over Plaintiff's state law contract claim and declined to adopt the M&R's recommendation regarding the contract claims. (D.E. 123).

On April 17, 2020, the undersigned ordered that Rodney Burrow, Preston Johnson, Jr., Philip Keiser, John Burruss, Erin Wyrick, Jeffrey Beeson and Dee Budgewater be substituted as defendants for Dr. Owen Murray, John Mills, Ben Raimer, Margarita de la Garza-Grahm, Harold Berenzweig, Elizabeth Ann Linder, and Mary Annette Gary. (D.E. 128). That same day, the undersigned recommended that Dr. Penn be dismissed from this action without prejudice. (D.E. 129). District Judge Tagle subsequently adopted this recommendation. (D.E. 154).

Defendants Hudson, Jumper, Keiser, Linthicum, and Penn have filed an interlocutory appeal from District Judge Tagle's Order entered on April 3, 2020. (D.E. 144). That appeal remains pending.

Defendants Penn, Linthicum, Jumper, Hudson, and Keiser (MTS Defendants) move to stay this case pending resolution of their appeal to the Fifth Circuit. (D.E. 152). Defendants Burrow, Johnson, Burruss, Wyrick, Beeson, and Budgewater (MTD Defendants), in turn, have filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (D.E. 158). Plaintiff has filed responses in opposition to the Motion to Dismiss. (D.E. 176, 178, 189).

On June 3, 2020, the undersigned ordered that all discovery in this case shall be stayed until the Motion to Dismiss is resolved. (D.E. 171). On July 2, 2020, the

undersigned conducted a telephone hearing where Plaintiff and Defendants' counsels presented arguments with respect to the pending motions to stay and dismiss. (D.E. 198).

## III. PLAINTIFF'S ALLEGATIONS AND CLAIMS

Plaintiff's allegations and claims have been set forth in detail in the M&R and are incorporated by reference herein. (D.E. 99, pp. 5-8). Plaintiff seeks injunctive relief as follows: (1) gender reassignment surgery in accordance with the applicable policy; (2) replacement or higher estrogen for at least one year; (3) a standard of care and treatment plan acceptable to the medical community and tailored to Plaintiff's request for gender reassignment surgery; (4) an experienced psychiatric doctor in treating gender dysphoria; (5) proper clothing, cosmetics, and hygiene items for a female; (6) medical care that can bring Plaintiff's skin characteristics in line with her female identity; (7) a medical pass for Plaintiff to grow her hair to standard female length; (8) a coordinator to bring this case to a close; and (9) educational material on gender dysphoria as referenced "in WPATH standard of care." (D.E. 62, pp. 8-11).

## IV. DISCUSSION

### A. The Parties' Respective Motions to Dismiss

#### (1) Applicable Legal Standards

Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996)). Lack of subject matter jurisdiction may be found in three instances: (1) the

complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist. *Id.*

Federal Rule of Civil Procedure 12(b)(6), in turn, provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554-55. When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To

prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived her of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

### *(2) Analysis of Claims and the Parties' Contentions*

### Standing and Capacity to be Sued

As members of the CMHCC, the MTD Defendants contend that: (1) they are not proper defendants as they lack the ability to redress Plaintiff's alleged injuries; (2) while the CMHCC and its officials help develop policies for medical treatment, the CMHCC and its members cannot compel the TDCJ to implement the policies or direct individualized treatment decisions; and (3) if Plaintiff obtains injunctive relief, the CMHCC does not have the authority to implement such relief. (D.E. 158, pp. 7-8). The MTD Defendants further contend that the CMHCC and its officials lack the capacity to sue or be sued. (D.E. 158, pp. 8-10).

Plaintiff refers back to District Judge Tagle's April 2, 2020 Order declining to adopt the M&R as grounds for supporting the notion that members of the CMHCC can be sued. (D.E. 178, p. 2). Alternatively, Plaintiff asserts that she did not initially sue members of the CMHCC and instead named Dr. Linthicum and Dr. Penn, whom she believed were the proper parties to sue. (D.E. 178, 3). Since Dr. Linthicum is permanently on the CMHCC, Plaintiff contends that she is "the boss" and capable of being sued in this case. (D.E. 178, p. 3). Lastly, Plaintiff contends that the proper defendants in this case are various John and Jane Does, who are comprised of directors

from the UTMB, the University of Texas Mental health services, UTMB regional directors, and University of Texas senior medical directors. (D.E. 189, p. 6).

Lack of capacity to be sued is a defense that may be asserted in a motion under Rule 12(b)(6). *See Barrie v. Nueces County District Attorney's Office*, 753 F. App'x 260, 265, 2018 WL 5095824, at *3 (5th Cir. Oct. 17, 2018) (per curiam). To have the requisite capacity to sue or be sued, a governmental department or political subdivision must "enjoy a separate legal existence." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (citation and internal quotation marks omitted). "[U]nless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.*

An entity's capacity to sue or be sued "shall be determined by the law of the state where the court is located." Fed. R. Civ. P 17(b)(3). To have the requisite capacity under Texas law, a governmental department or political subdivision must have been granted the authority to "sue or be sued." *Darby*, 939 F.2d at 313. The statutory scheme that authorizes CMHCC to assist TDCJ with developing state-wide policies related to inmate health care does not include any language granting CMHCC the power to sue and be sued. See Tex. Gov't Code §§ 501.131-501.156.

The undersigned agrees with the MTD Defendants that the CMHCC lacks the requisite legal capacity and cannot be sued. However, Plaintiff does not seek to sue the entity identified as CMHCC and such entity has not been named as a party defendant. Members of the CMHCC committee instead have been identified and named as

defendants in this case. It is unclear from the parties' representations during the course of this case whether one or all of these CMHCC committee members serve roles within the ambit of the UTMB or any state medical service employed by the TDCJ.

At the August 23, 2017 hearing before Magistrate Judge Ellington, counsel for Dr. Linthicum represented to the Court that: (1) in the event Plaintiff only seeks gender reassignment surgery, the appropriate defendant would be Dr. Owen Murray from the UTMB; and (2) if Plaintiff seeks a policy change or a new policy regarding care for transgender inmates, the appropriate defendants would be the principal members of the CMHCC. (D.E. 165, p. 14). However, Dr. Murray was dismissed from this case on April 17, 2020, when the undersigned ordered the MTD Defendants to be substituted in place of several former CMHCC individuals including Dr. Murray. It is unclear whether any one of the MTD Defendants assumed Dr. Murray's role on the CMHCC or has any current connection with the UTMB.

During the course of the July 2, 2020 telephone hearing, it was suggested that Dr. Linthicum, who is already a defendant in this case, may have the authority to provide injunctive relief for Plaintiff related to her treatment for her Gender Dysphoria. (D.E. 198, pp. 23-24). She was previously identified as a member of the CMHCC committee. However, at the July 2, 2020 hearing, counsel for many of the MTD Defendants represented that Dr. Linthicum is the TDCJ's health services director and not a CMHCC member. (D.E. 198, p. 23). Counsel then provided the following confusing statement: "[M]y understanding of CMHCC and how it works is that the health services division of TDCJ, which is headed by Dr. Linthicum, has the ultimate power to enforce policies

within TDCJ." (D.E. 198, pp. 23-24).

Plaintiff stated at the July 2, 2020 hearing that it was never her intent to sue CMHCC but that it was her understanding that the CMHCC was brought into the case to represent the Jane and John Does of the directors of the medical and mental health branch. (D.E. 198, p. 25). Neither Plaintiff nor counsel representing the MTD Defendants provided the Court with any additional clarity at the hearing as to the identity of the parties capable of granting the injunctive relief requested by Plaintiff.

Following the hearing, Plaintiff filed a motion seeking to dismiss the MTD Defendants. (D.E. 195). Plaintiff appears to base her motion in part on representations made at the July 2, 2020 hearing that the MTD Defendants could not provide any injunctive relief. (D.E. 195, p. 2). Plaintiff further requests that the Office for the Attorney General submit the names of the correct Defendants to be sued. (D.E. 195, p. 3). Plaintiff generally identifies these officials as directors of University of Texas Mental Health Services Medical Branch, directors of UTMB, directors of Texas Regional Medical Services of Texas, and directors of the University of Texas Seniors Medical Branch of Texas. (D.E. 195, pp. 3-4).

In short, the parties have provided the Court during the course of this litigation with vague and sometimes conflicting guidance as to the identity of the proper defendants. As best as this Court can glean, Dr. Linthicum appears to be a proper party and has been named as a defendant. A fair reading of Plaintiff's Amended Complaint reflects that she seeks modifications to the applicable policy governing her treatment plan which may include various non-invasive treatments and gender reassignment surgery.

The undersigned is reluctant at this time to recommend dismissal of any defendants named as CMHCC defendants, as these individuals play a role in determining treatment policy and may or may not otherwise be employed with the UTMB or any other medical division servicing the TDCJ.

As this case proceeds, further factual development will aid in the resolution as to whether one of more of the named defendants (or officials yet to be identified) have the requisite authority, based on their positions with the UTMB or other medical divisions servicing the TDCJ, to provide Plaintiff with her requested injunctive relief. Accordingly, the undersigned respectfully recommends that the MTD Defendants' Motion to Dismiss (D.E. 158) be denied with regard to whether any of them as current members of the CMHCC should be dismissed at this time. The undersigned further respectfully **RECOMMENDS** that the Court deny Plaintiff's Motion to Dismiss Defendants (D.E. 195) without prejudice.

### Equal Protection Claim

The MTD Defendants contend that Plaintiff has failed to state an Equal Protection Claim because she "is not being treated differently from any other inmate as there are none similarly situated to her in terms of receiving the surgery she desires." (D.E. 158, pp. 10-11). In asking the Court to deny the Motion to Dismiss, Plaintiff cites District Judge Tagle's April 2, 2020 Order which concluded that Plaintiff has stated equal protection claims sufficient to survive a Rule 12(b)(6) motion. (D.E. 178, pp. 2, 4).

The Equal Protection Clause of the Fourteenth Amendment states that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S.

Const. Amend. XIV § 1.  The Equal Protection Clause directs that similarly situated people should be treated alike.  *Plyler v. Doe*, 457 U.S. 202, 216 (1982).  "Its basics are rote: equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made."  *Wood v. Collier*, 836 F.3d 534, 538-39 (5th Cir. 2016) (citations and quotations marks omitted).

Equal protection jurisprudence typically has been concerned with governmental classifications that affect some groups of citizens differently than others.  *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008).  Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an identifiable group.  *Id.*

The Fifth Circuit has made clear that Equal Protection's "similarly situated" element is not a one-size-fits-all analysis. *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 233 (5th Cir. 2012).  "The legal requirement that a class-of-one plaintiff's comparators be 'similarly situated' is not a requirement susceptible to rigid, mechanical application—'[t]here is no precise formula to determine whether an individual is similarly situated to comparators.'" *Id.* "In short, the inquiry is case-specific and requires us to consider 'the full variety of factors that an objectively reasonable ... decisionmaker would have found relevant in making the challenged decision.'" *Id.*

In the April 2, 2020 Order, District Judge Tagle explained that neither the M&R nor Defendants' first motion to dismiss contained a case-specific similarly-situated analysis with respect to Plaintiff's claims.  (D.E. 123, p. 2).  District Judge Tagle framed Plaintiff's equal protection claim as follows: "[Plaintiff] alleges that Defendants helped

her undergo gender transition, including chemical castration, making her similarly situated to cisgendered female inmates and resulting in a violation of the Equal Protection clause when her surgery was denied." (D.E. 123, p. 3). She concluded that such claim was facially plausible when assuming the truth of the facts set forth in the amended complaint. (D.E. 123, p. 3).

At the July 2, 2020 telephone hearing, counsel for the MTD Defendants argued that Judge Tagle's Order left the door open for them to present a case-specific similarly-situated analysis on this issue as part of their Motion to Dismiss. (D.E. 198, pp. 30-31). Because sexual assignment surgery is not provided to any inmate in Texas, the MTD Defendants argue in their brief that Plaintiff has failed to allege facts to indicate that Plaintiff has been treated differently from any other inmates since no other inmate has received gender reassignment surgery. (D.E. 158, p. 11).

The analysis presented by the MTD Defendants fails to provide a sufficient case-specific inquiry that addresses Plaintiff's specific allegations of being treated differently than cisgender females who receive necessary surgeries for their respective medical conditions. Taking Plaintiff's allegations as true, Plaintiff has stated an equal protection claim sufficient to survive the MTD Defendant's Motion to Dismiss. Accordingly, the undersigned respectfully **RECOMMENDS** that this motion be denied as to whether Plaintiff has stated a violation of the Equal Protection Clause.

## Eleventh Amendment Immunity

The MTD Defendants assert that they are entitled to Eleventh Amendment immunity from suit. (D.E. 158, pp. 11-13). "In determining whether the doctrine of *Ex*

*parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and modifications omitted). Thus, the *Ex parte Young* exception applies when (1) a plaintiff has pled a valid claim for a violation of federal law against a state official responsible for enforcing the law at issue in that person's official capacity; (2) the claim seeks only prospective injunctive relief; and (3) the claim seeks to address a "continuing violation of federal law." *Walker v. Livingston*, 381 F. App'x 477, 478-79 (5th Cir. 2010) (per curiam) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996)).

As discussed above, Plaintiff has successfully stated an equal protection claim sufficient to move forward. Plaintiff's allegations indicate that any possible violations of her equal protection rights are ongoing as she continues to be denied the treatment he seeks under the existing policies. Plaintiff specifically seeks prospective injunctive relief in the form of either surgery or non-invasive procedures for Gender Dysphoria as well as modifications to the existing policy to allow such treatment and care for inmates with Gender Dysphoria.

Such relief sought by Plaintiff essentially seeks to address the continuing violations of her equal protection rights. Because the *Ex parte Young* exception applies in this case, the MTD Defendants' Motion to Dismiss should be **DENIED** on the issue of whether Plaintiff's equal protection claims against all of the named defendants in their official capacities are barred by the Eleventh Amendment.

# THE PRISON LITIGATION REFORM ACT (PLRA)

The MTD Defendants assert that the injunctive relief sought by Plaintiff would violate the PLRA. (D.E. 158, pp. 13-14). They contend that: (1) because no inmates within the TDCJ receive sexual reassignment surgery (SRS), no injunctive relief can be ordered that is so narrowly drawn as to provide Plaintiff SRS in the manner it is provided to other inmates; (2) Plaintiff has no constitutional right to SRS, as inmates are only entitled to a remedy that eliminates the constitutional injury; and (3) an injunction provided to Plaintiff would impact providers who are subcontracted to serve the offender population and their ability to perform surgeries based on their sound medical judgment. (D.E. 158, p. 14).

PLRA greatly limits a court's ability to fashion injunctive relief. Before a district court can award such relief, it must find that "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation." 18 U.S. C. § 3626(a)(1)(A). The court must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.* If, after making the necessary findings and weighing the adverse impact on the criminal justice system, the court still feel injunctive relief is required, such relief "shall extend no further than necessary to correct the violation of the federal right of a particular plaintiff or plaintiffs. *Id.* Under the PLRA, plaintiff are not entitled to the most effective available remedy; they are entitled to a remedy that eliminates the constitutional injury. *See Westefer v.*

*Neal*, 682 F.3d 679, 683-84 (7th Cir. 2012) (vacating an injunction under the PLRA because it exceeded what was required under the Due Process Clause).

As discussed above, Plaintiff has successfully stated an equal protection claim and seeks prospective injunctive relief to correct the ongoing violation of her equal protection rights. At this stage in the case, the undersigned cannot conclude that the injunctive relief sought by Plaintiff is not so narrowly drawn as to be the least intrusive means necessary to correct any violation of her constitutional rights. Following discovery and further development of the issues in this case, the Court will be in better position to consider whether the injunctive relief sought by Plaintiff violates the PLRA.

### Breach of Contract Claim

In her amended complaint, Plaintiff advances a state law claim for breach of contract. Plaintiff alleges that she was offered the option of having a gender reassignment surgery through the recommendation of Dr. Meyer, that she accepted the offer, but that Dr. Meyer's recommendation was not honored. (D.E. 62, pp. 13-14). Liberally construed, Plaintiff claims that the "blanket denial" of sex reassignment surgery breached the contract arising in connection with CMHC Policy G-51.11 between Plaintiff and Defendants. (D.E. 62, pp. 26-28). The MTD Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law breach of contract claim and that, alternatively, Plaintiff has failed to state a state law claim. (D.E. 158, pp. 14-15).

Section 1367(a) of Title 28 authorizes a district court to exercise supplemental jurisdiction over all other claims that are so related to the claims that provide the district

court with original jurisdiction.  28 U.S.C. § 1367(a).  In the April 2, 2020 Order, District Judge Tagle determined that it was appropriate to exercise supplemental jurisdiction over Plaintiff's state law claim as it was related to the equal protection claim.  (D.E. 123, p. 3).  The undersigned similarly reiterates that Plaintiff has stated a breach of contract claim and that the Court should retain supplemental jurisdiction over same.  Accordingly, the undersigned respectfully **RECOMMENDS** that the Court deny the MTD Defendants' Motion to Dismiss with respect to Plaintiff's state law claim.

### B.  Motion to Stay

Defendants Penn, Linthicum, Jumper, Hudson, and Keiser (MTS Defendants) move to stay this case pending resolution of their appeal to the Fifth Circuit.  (D.E. 152).  They contend that a discretionary stay is appropriate so that the Fifth Circuit can address the threshold issue of Eleventh Amendment immunity.  In both their brief and at the July 2, 2020 telephone conference, the MTS Defendants argue that discovery should not be conducted until the issue of Eleventh Amendment immunity was resolved on appeal.  (D.E. 152, p. 3; D.E. 198, pp. 8-9, 11).  The MTS Defendants further argue that they are likely to succeed on appeal and that such decision would be issued by the Fifth Circuit in a few months.

The MTS Defendants are primarily concerned with having to conduct extensive discovery, which they feel may ultimately prove to be unnecessary.  On June 3, 2020, the undersigned ordered that all discovery on this case shall be stayed until the Motion to Dismiss is resolved.  (D.E. 171).  Because the order staying discovery addresses the MTS

Defendants' concerns about discovery, the undersigned finds that their Motion to Stay all proceedings pending a ruling by the Fifth Circuit is unnecessary at this time.

Should District Judge Tagle agree with the undersigned's recommendations and retain Plaintiff's claims, the undersigned will issue a scheduling order setting forth various deadlines including one for discovery. At that time, any or all defendants may renew their motion to stay in the event that the Fifth Circuit has yet to issue a decision on appeal. Accordingly, the undersigned RECOMMENDS that the Court deny the MTS Defendants' Motion to Stay (D.E. 152) without prejudice to renew.

## V.     RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that the MTD Defendants' Motion to Dismiss (D.E. 158) be **DENIED** in all respects, that Plaintiff's equal protection claims be **RETAINED** against them, and that the Court exercise supplemental jurisdiction with respect to Plaintiff's state law claim for breach of contract against them. It is respectfully recommended further that Plaintiff's Motion to Dismiss Defendants (D.E. 195) be **DENIED** without prejudice to renew. Lastly, the undersigned respectfully recommends that the MTS Defendants' Motion to Stay (D.E. 152) be **DENIED** without prejudice to renew.

Respectfully recommended this 16th day of July, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).