IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| BOBBIE LEE HAVERKAMP AKA DAVID ALAN HAVERKAMP #702013 § § § STILES UNIT, BEAUMONT, TEXAS § § v. § § JOHN DOE UTMB MEDICAL, AUSTIN, TEXAS, JANE DOE UTMB MEDICAL, AUSTIN, TEXAS, JOHN & JANE DOE UTMB MENTAL HEALTH, AUSTIN TEXAS § § § § § § | Case No. 2:17-CV-18 |

## DEFENDANTS' OBJECTIONS TO
## MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), Defendants respectfully submit the following objections to certain findings, conclusions and/or recommendations set out in the Magistrate Judge's Memorandum and Recommendation, issued on July 16, 2020 (the "Report"). Defendants Penn, Linthicum, Jumper, Hudson and Keiser (the "MTS Defendants") object to certain findings, conclusions and/or recommendations in this Report relating to their Motion to Stay (D.E. 152). Defendants Burrow, Johnson, Burruss, Wyrick, Beeson, and Budgewater (the "MTD Defendants") object to certain findings, conclusions and/or recommendations in the Report relating to their Motion to Dismiss (D.E. 158). The MTS Defendants and MTD Defendants respectfully show the following:

**Objections**

Under 28 U.S.C. § 636(b)(1), as well as Rule 72(b), a party may file and serve objections to the proposed findings and recommendations of a magistrate judge's

1

report.  A party may file its objections within fourteen (14) days after being served with a copy of the magistrate judge's report.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415, 1420-23, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).  Under section 636(b)(1)(C), the Court must make a *de novo* determination of those portions of the report to which objection is made.  28 U.S.C. § 636(b)(1)(C).

I.      **The MTD Defendants' objections**

   A.      **The Report shows the exercise of Article III jurisdiction where none exists.**

The Report states that a thorough reading of Plaintiff's Amended Complaint ("PAC") reflects that Plaintiff "seeks modifications to the applicable policy governing her treatment plan which may include various non-invasive treatments and gender reassignment surgery."  D.E. 201, at 12.  Based on the Magistrate Judge's reading of the PAC, none of the MTD Defendants can remain in this suit.

As stated in their Motion, the MTD Defendants are all members of the Correctional Managed Healthcare Committee ("CMHCC"), a statutorily-created arm of the State of Texas.  D.E. 158, at 3.  As also explained, "Members of the CMHCC do not provide medical care within prison facilities" and "do not provide specific courses of medical treatment."  *Id.* at 4.  The "CMHCC *and its officials* have *no authority* to order, or otherwise obtain funding for, any particular medical treatment."  *Id.* at 7 (emphasis added).  Moreover, "[e]ven if the CMHCC adopts a policy, it cannot compel the TDCJ," which operates the facility where Plaintiff is incarcerated, to "implement that policy."  *Id.* The CHMCC also "cannot order sexual reassignment surgery for inmates."  *Id.*  "Nor does CMHCC or its officials have authority to direct individual treatment decisions."  *Id.*

2

The MTD demonstrates that the CMHCC defendants have not *caused* an injury and have no ability to *redress* an injury. In *Okpalobi*, the en banc Fifth Circuit found abortion doctors did not have standing to sue state officials regarding a law regulating their conduct because the law was enforced by a private case of action, not by the state officials. *See Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (en banc). The Fifth Circuit explained that courts evaluating redressability should not "confuse[ ] *the statute's* immediate coercive effect on the plaintiffs with any coercive effect that might be applied by the *defendants*." *Id.* at 426.

Here, CMHCC defendants did not cause Plaintiff's injury by having a policy that provides for provider discretion in treating gender dysphoria.[1] Moreover, *even if* the Court grants the relief which, based on the Magistrate's fair reading of the PAC, the Plaintiff actually seeks, the MTD Defendants will not be able to implement or provide that relief to Plaintiff. Because the MTD Defendants lack any authority to make changes to Plaintiff's current medical treatment or to pursue steps which could result in treatments or surgeries that Plaintiff seeks, the MTD Defendants could not be directed by the Court's equitable power to provide the relief that Plaintiff requests. The Court therefore lacks Article III jurisdiction to hear Plaintiff's claims against the MTD Defendants. *See Summers v. Earth Island Ins.,* 555 U.S. 488, 493 (2009) (to have Article III standing, a plaintiff must show that it is "likely that a favorable judicial decision will prevent or redress the injury."); *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (explaining that state officials cannot be enjoined to act in any way that is beyond their state-granted authority).

---

[1] CMHC Policy G-51.11 at pp.1-3, Eff. 1/10/2017, https://www.tdcj.texas.gov/divisions/cmhc/docs/cmhc_policy_manual/G-51.11.pdf (last visited July 22, 2020).

3

For these same reasons, sovereign immunity bars Plaintiff's claims. *Ex parte Young* is not a substitute for the injury-in-fact or redressability requirements of standing. The CMHCC defendants have and continue to assert their entitlement to Eleventh Amendment immunity. Because the MTD Defendants do not "have sufficient 'connection' to enforcing [the] allegedly unconstitutional law," the *Ex parte Young* doctrine does not apply. *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020).

Nor can the Report simply defer resolving the question of whether Defendants possess ability to provide redress Plaintiff's alleged injury until a later date. If Plaintiff cannot adequately allege that Defendants have the ability to redress her alleged injury or harm, then Plaintiff has failed to demonstrate jurisdiction. Because Plaintiff has the burden to show jurisdiction, but fails to do so, her claims must be dismissed. *See, e.g., Rodgers v. Texas Dep't of Family Resources,* No. 4:19-CV-00296, 2019 WL 4013887, at *1 (Aug. 26, 2019) ("A district court must dismiss a case when the plaintiff fails to establish subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1)) (citing *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001)).

**Objection 1:** The MTD Defendants accordingly object to the Report's exercise of Article III jurisdiction. *See* D.E. 201, at 9-21.

### B. Neither *Ex parte Young* nor standing can substitute for a lack of jural authority.

Even a finding that Haverkamp has standing or Defendants are not entitled to Eleventh Amendment immunity does not resolve the issue of the CMHCC defendants' lacking authority to sue or be sued. This is not a matter of first impression. At least one other court in the Southern District of Texas has already reached the conclusion that the

CMHCC "lacks the requisite legal capacity and cannot be sued." *See Sain v. Collier*, No. H-18-4412, 2019 WL 4144321, at *10 (S.D. Tex. Aug. 30, 2019).

The Report ignores this distinction and appears to suggest any plaintiff can circumvent the *Sain* ruling by simply suing the individual members of the CMHCC. The Report does not cite a single case for the proposition that a non-jural entity can be sued under the *Ex parte Young* exception by way of suing voting members for the sole purpose of requiring them to rewrite a policy. In fact, other courts in this district have appeared to hold the very opposite. *See Ramos v. Lucio*, CV B-08-122, 2008 WL 11503546, at *4 (S.D. Tex. Sept. 24, 2008) ("The constable's office is not a separate entity with its own jural existence that Constable Burnias would represent in his official capacity."); *Brown v. City of Houston, Tex.*, CV H-17-1749, 2019 WL 7037391, at *3 (S.D. Tex. Dec. 20, 2019) ("Brown cannot bring claims against the Harris County District Attorney's Office, a non-jural entity, by suing [the District Attorney] in her official capacity."). And the Report's argument that the CMHCC members may otherwise be employed by UTMB or any other medical division servicing the TDCJ is of no relevance. Dkt. No. 201, at 13. They have been sued in their official capacity as policy makers, not as employees of TDCJ or UTMB, much less as employees whose actions in those capacities would affect Haverkamp.

"[T]he statutory scheme that authorizes CMHCC to assist TDCJ with developing state-wide policies related to inmate health care does not include any language granting CMHCC the authority to sue or be sued on its own behalf." *Sain*, 2019 WL 4144321, at *10. Because the CMHCC lacks jural authority, its members cannot be sued in their official capacity to get around this bar.

**Objection 2**: The MTD Defendants object to a finding that CMHCC members have the capacity to sue or be sued.

### C. The Report fails to observe Fifth Circuit precedent on establishing subject-matter jurisdiction.

In failing to recommend granting the MTD Defendants' Rule 12(b)(1) Motion, the Report makes at least two errors. First, the Report fails to observe and apply the rule that establishing jurisdiction is the responsibility of the Plaintiff. Where the Plaintiff fails to carry her burden, the Plaintiff's case must be dismissed. Second, the Report erred procedurally by failing to rely upon (1) only the PAC, (2) the PAC supplemented only by *undisputed* facts, or (3) the complaint supplemented by the Magistrate Judge's *resolution of disputed facts*.

#### 1. The Report fails to apply the rule that plaintiffs, including pro se plaintiffs, have the burden of establishing jurisdiction.

The MTD Defendants object to the Report's improper resolution of a jurisdictional issue under Fed. R. Civ. P. 12(b)(1). There is presumption against jurisdiction. *SmallBizPros, Inc. v. Mac Donald,* 618 F.3d 458, 461 (5th Cir. 2010). The party asserting jurisdiction, here the Plaintiff, bears the burden of proof on a Rule 12(b)(1) motion to dismiss. *Randall D. Wollcott, M.D. v. Sebelius,* 635 F.3d 757, 762 (5th Cir. 2001); *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). Though a court may construe a *pro se* party's pleadings liberally, *pro se* plaintiffs, as "the parties' asserting federal subject matter jurisdiction, bear the burden of proving that its requirements are met." *Garcia v. City of McAllen,* No. 7:13-CV-460, 2013 WL 6589426, *2 (S.D. Tex. Dec. 16, 2013) (quoting *Willoughby v. United States ex rel. Dept. of the Army,* 730 F.3d 476, 479 (5th Cir. 2013)). Here, as shown by the Magistrate Judge's

frequent acknowledgement of uncertainties in the record, *see infra,* the Plaintiff failed to carry her burden of establishing subject matter jurisdiction. The Court should therefore dismiss. *See, e.g., Rodgers v. Texas Dep't of Family Resources,* No. 4:19-CV-00296, 2019 WL 4013887, at *1 (Aug. 26, 2019) ("A district court must dismiss a case when the plaintiff fails to establish subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1)) (citing *Ramming,* 281 F.3d at 161).

      **2.    The Report considered incorrect items in the record in recommending denial of the Motion.**

"A motion to dismiss for lack of subject matter jurisdiction may be decided by the district court on one of three bases: the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts, plus the court's resolution of disputed facts." *Ynclan v. Dept. of Air Force,* 943 F.2d 1388, 1390 (5th Cir. 1991). Here, the Report does not resolve the jurisdictional issue by using a proper basis. The Report did not resolve the jurisdictional issue by looking to the PAC alone. The Report also did not resolve the issue based on the PAC, as supplemented by *undisputed* facts. Finally, the Report did not resolve the jurisdictional issue based on the PAC supplemented by undisputed facts, together with the Magistrate Judge's *resolution of disputed facts*.

Instead, the Report recommends denial of the 12(b)(1) Motion without prejudice, D.E. 201, at 13, based on the Magistrate Judge's reading of the PAC, plus the Magistrate Judge's acknowledging, but declining to address, disputed facts. Specifically, the Report refuses to decide the jurisdictional issue because of an alleged "confusing statement" made by one of the Defendants' counsel at a July 2, 2020

7

hearing,[2] together with other matters in the record which are either unclear or disputed. *See* D.E. 201, at 11 ("It is unclear from the parties' representations during the course of this case whether one or all of these CMHCC committee members serve roles within the ambit of the UTMB or any state medical service employed by the TDCJ."); *id.* ("It is unclear whether any one of the MTD Defendants assumed Dr. Murray's role on the CMHCC or has any current connection with the UTMB."); *id.* at 12 ("Neither Plaintiff nor counsel representing the MTD Defendants provided the Court with any additional clarity at the hearing as to the identity of the parties capable of granting the injunctive relief requested by Plaintiff."); *id.* ("[T]he parties have provided the Court during the course of this litigation with vague and sometimes conflicting guidance as to the identity of the defendants.").

The MTD Defendants again note that any shortcomings of the PAC or the facts in demonstrating jurisdiction is the responsibility of the Plaintiff, not Defendants, as Plaintiff bears the burden and the case must be dismissed as she fails to carry it. *Rodgers*, 2019 WL 4013887, at *1; *Ramming,* 281 F.3d at 161. In any event, the MTD Defendants object to the Report's reliance on an improper basis to deny their Motion.

**Objection 3:** The Report therefor errs in recommending a denial of the MTD Defendants' Rule 12(b)(1) Motion. D.E. 201 at 13.

    **D.**     **In analyzing Equal Protection, the Report fails to address that all prisoners are treated similarly and give deference to decisions made in a prison context.**

---

[2] In describing this statement by one of the Defendants' counsel, the Magistrate Judge cited a transcript from a July 2, 2020 hearing. *See* D.E. 201, at 11 (citing transcript, D.E. 198, at 23-24). Counsel apparently cannot gain access to this transcript until the release of the transcript's restriction; this release is set for October 13, 2020.

A Fourteenth Amendment violation cannot exist on the basis of the denial of sexual reassignment surgery ("SRS"); this Court need not refer to a single fact in Haverkamp's suit to draw this conclusion. Like the Court in *Hall v. Tex. Comm'n on Law Enf't,* which reasoned that prior case law foreclosed arguing that an adjudicatory proceeding is required in a civil matter, *see* 685 Fed. Appx. 337, 340 (5th Cir. 2017), the Court should follow prior precedent in determining the applicability of *Ex Parte Young* in this case. This Court has already determined that Texas is not constitutionally required to, and does not, offer SRS to its state inmates. *See Gibson v. Collier*, 920 F.3d 212, 227 (5th Cir. 2019), *cert. denied,* 140 S. Ct. 653 (2019). Where no Texas inmates, let alone similarly situated inmates,[3] receive the surgery Haverkamp desires, there can be no violation of the Equal Protection Clause, regardless of any facts pled by Haverkamp.

It is true that an Equal Protection claim may be asserted a "class of one." To state a claim as a class of one, the plaintiff must allege facts that demonstrate (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment. *Lindquist v. City of Pasadena,* 669 F.3d 225, 233 (5th Cir. 2002). Under rational basis review, differential treatment must be upheld against an Equal Protection challenge if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe,* 509 U.S. 312, 319-20 (1993) (citation omitted). As the Fifth Circuit stated:

---

[3] Similar to *Hall*'s requirement that the Plaintiff show a connection between his reporting of crimes to an inability to secure employment, this Court should also recognize that Haverkamp has failed to identify the group of inmates she is actually similarly situated to. The proposed group cannot be female inmates, as the district court has held, because Haverkamp is neither a biological female nor is she imprisoned at a female state prison. And, as the Court knows, no inmate is provided SRS, much less female inmates. Under no understanding of the phrase "similarly situated" should female Texas inmates be used as the comparator group for the purposes of Haverkamp's Equal Protection Clause claim.

> In reviewing [a prisoner's] discrimination claim we cannot disregard the special difficulties that arise in the prison context. Our inquiry must acknowledge the importance of the state's interest in the prison setting. We must accord *wide ranging deference* to the decisions of prison administrators and permit them to make difficult judgments concerning prison operations. A prisoner does not retain constitutional rights that are inconsistent with the legitimate penological objectives of the correction system.

*Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990) (citation omitted) (emphasis added).

As the MTD Defendants have stated, Plaintiff cannot sustain an Equal Protection claim as a class of one. This is because no inmates are provided sexual reassignment surgery. D.E. 158, at 11. So even assuming *arguendo* that Plaintiff is similarly situated to biologically female inmates, she is not treated any differently than they. The Report's terse recommendation fails to adequately consider the state's interest in the prison setting and disregards the fact that prisoners do not retain constitutional rights inconsistent with legitimate penological objectives. For example, the state's budget for prison healthcare operations is finite. Allowing cisgender inmates, male inmates or male inmates who identify as transgender to receive gender reassignment surgery, using taxpayer funds, would give those inmates a benefit that is costly and would diminish available resources used to treat other equally serious medical and/or psychological problems experienced by inmates incarcerated in Texas. That is particularly so because the treatment Plaintiff seeks is far from universally accepted in the medical community. *See Gibson v. Collier*, 920 F.3d 212, 220–21 (5th Cir. 2019). In addition, allowing cisgender female inmates, male inmates, or male inmates who identify as transgender to receive gender reassignment surgery at the tax payer's expense would confer on inmates seeking that surgery a benefit unavailable to private

citizens who have never committed felonies. Conferring such taxpayer-funded benefits on felons, while the state denies the same benefits to law-abiding citizens cannot serve a legitimate penological interest.

**Objection 4:** The MTD Defendants object to the Report's determination that the Equal Protection analysis presented by the MTD Defendants fails to provide a sufficient case-specific inquiry that addresses Plaintiff's specific allegations of being treated differently than cisgender females who receive necessary surgeries for their respective medical conditions. D.E. 201, at 15.

**Objection 5:** The MTD Defendants object to the Report's recommendation on the Equal Protection issue because it is inconsistent with Fifth Circuit case law on deference in a penological context, including *Smith,* 914 F.2d at 742. D.E. 201, at 15.

> **E. Because Plaintiff cannot state an Equal Protection challenge, the Report incorrectly recommends denial of Eleventh Amendment immunity.**

As set out above, the Report incorrectly recommends ruling that Plaintiff has stated an Equal Protection claim. Plaintiff has not stated an Equal Protection claim. Because Plaintiff has not stated an Equal Protection claim, she has not alleged the ongoing violation of federal law needed for the *Ex Parte Young* exception to avoid the Eleventh Amendment bar to suit. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002).

**Objection 6:** The MTD Defendants object to the Report's determining that Plaintiff has stated an Equal Protection claim and determining that the *Ex Parte Young* exception applies. *See* D.E. 201, at 16.

### F. The Report fails to make recommendations, or makes incorrect recommendations, on the MTD Defendants' PLRA arguments.

The Prison Litigation Reform Act greatly limits a court's ability to fashion injunction relief. Before a district court can award such relief, it must find that "such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation." *Ball v. LeBlanc,* 792 F.3d 584, 598-99 (5th Cir. 2015) (quoting 18 U.S.C. § 3626(a)(1)(A)). The court must also "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.* If, after making the necessary findings and weighing the adverse impact on the criminal justice system, the court still feels injunctive relief is required, such relief "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." *Id.* at 598-99.

The Report's declining to determine that the injunctive relief that Plaintiff seeks would violate the PLRA, *see* D.E. 201, at 18, is incorrect for multiple reasons. To begin, Plaintiff has not pled a constitutional violation or the violation of a Federal right. Awarding injunctive relief to correct an alleged harm which does not violate a Federal right nor violate the Constitution would violate the PLRA. The MTD Defendants should prevail on their PLRA argument for this reason alone. Also, as the MTD Defendants noted, Plaintiff seeks injunctive relief based on the Equal Protection clause requiring Defendants to provide her sexual reassignment surgery like that provided to similarly situated inmates. However, no sexual reassignment surgery is performed for *any* inmates at the TDCJ. D.E. 158. Therefore, no injunctive relief for Plaintiff can be narrowly tailored by requiring the MTD Defendants to provide Plaintiff with the same

12

surgery that they provide to other inmates. Though the Report fails to address this point, it shows the Defendants should have prevailed on their Motion.

The Report further misapplies PLRA section 3626 and the Fifth Circuit's determination in, *e.g., Ball,* 792 F.3d at 598. For example, the Report makes no attempt to resolve – while giving substantial weight to any adverse impact or public safety or the criminal justice system – whether Plaintiff's requested relief would have an adverse impact on public safety or the operation of a criminal justice system. Instead, the Report defers deciding this issue pending discovery and development of the issues in the case. This deferral is improper. While under Rule 12(d), where matters outside the pleadings are presented to and not excluded by the court, a court may convert a Rule 12(b)(6) motion into an evidentiary motion and defer ruling pending further factual development the MTD Defendants' Motion presented no matter outside the pleadings.[4] *See* D.E. 158.

**Objection 7:** For the above reasons, the MTD Defendants object to the Report's recommendations and/or failure to make recommendations on their PLRA-based arguments. D.E. 201, at 18.

### G. The Report incorrectly states that the Court has previously determined that Plaintiff states a contract claim, and incorrectly fails to recommend that this claim be dismissed for lack of essential elements.

As the MTD Defendants noted, Plaintiff lacks standing to sue Defendants. D.E. 158, at 15. Accordingly, no jurisdiction exists over the Plaintiff's federal claims, and the Court need not retain supplemental jurisdiction over Plaintiff's state law contract claim.

---

[4] Where a PLRA issue is raised at the motion-to-dismiss stage, the court may look behind the pleadings and conduct fact-finding in order to resolve the issue. *See Bryant v. Rich,* 530 F.3d 1368, 1374 (11th Cir.2008).

If the Court retains jurisdictions over the contract claim, then it should be dismissed for failure to adequately allege an essential element. The MTD Defendants also noted that Plaintiff stated no breach of contract claim because Plaintiff failed to state or identify the first element of this claim, *i.e.,* the existence of a valid contract. D.E. 158, at 15.

For reasons set out above, no subject matter jurisdiction exists over Plaintiff's federal claims. The MTD Defendants therefore object to the Report's determining otherwise. *See* D.E. 201, at 18. The MTD Defendants also object to the Report's apparent recommendation that the Court should recognize that it has already determined that the Plaintiff states a contract claim, and that the Report simply "reiterates that Plaintiff has stated a contract claim." D.E. 201, at 19. This is incorrect; the Court's Order did not determine that Plaintiff has stated a contract claim. *See* D.E. 123, at 3. And in fact, Plaintiff has not stated a contract claim.

**Objection 8:** The MTD Defendants object to the Report's failure to find that Plaintiff did not state a contract claim. D.E. 201, at 18-19. Plaintiff's contract claim should be dismissed for failure to state a claim.

II.     **The MTS Defendants' objections.**

As the MTD Defendants have asserted, staying the case is appropriate pending appeal of the Eleventh Amendment immunity issue. Among other things, the MTS Defendants note that staying the case will avoid costly discovery, when such discovery will ultimately be unnecessary in any event because the Defendants will prevail on the appeal. *See, e.g.,* D.E. 201, at 19. The Report, however, recommends denial of the stay, without prejudice to renewal, so that Defendants may renew when the Magistrate Judge issues a scheduling order setting forth various deadlines, including those

14

governing discovery. D.E. 201, at 20. The absence of a stay, however, will cause the parties and their attorneys to incur costs, including but not limited to, duplicative stay filings which would otherwise be avoided. Similarly, the absence of stay will also result in unnecessary costs to the court system (and thus the taxpayer) by, among other things, requiring it to consider the same types of filings multiple times.

**Objection 9:** The MTS Defendants object to the Report's declining to recommend a stay. D.E. at 20-21.

## Conclusion

For the reasons set out above, and pursuant 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the MTD Defendants and the MTS Defendants respectfully make the objections to the Magistrate Judge's July 16, 2020 Memorandum and Recommendation herein stated. These Defendants respectfully request that their objections be granted and sustained. The Defendants respectfully request all other appropriate relief.

        Respectfully submitted,

        STRAWN PICKENS L.L.P.

By: */s/ John R. Strawn, Jr*
    John R. Strawn, Jr., #19374100
    Pennzoil Place, South Tower
    711 Louisiana, Suite 1850
    Houston, Texas 77002
    (713) 659-9600
    (713) 659-9601 Fax
    jstrawn@strawnpickens.com
    ATTORNEYS FOR DEFENDANT,
    PHILIP KEISER, M.D.

OF COUNSEL:
STRAWN PICKENS L.L.P.
Andrew L. Pickens, #15971900
Pennzoil Place, South Tower
711 Louisiana, Suite 1850
Houston, Texas 77002

Tel: (713) 659-9600
Fax: (713) 659-9601
apickens@strawnpickens.com

          */s/ Courtney Corbello*
          Courtney Corbello, #24097533
          Assistant Attorney General, State of Texas
          Southern District ID: 3089117
          Courtney.Corbello@oag.texas.gov
          ATTORNEY FOR DEFENDANTS, RODNEY BURROW, PRESTON JOHNSON, JR., JOHN BURRUSS, ERIN WYRICK, JEFFREY BEESON, DEE BUDGEWATER, CYNTHIA JUMPER, M.D., AND F. PARKER HUDSON, M.D.


          */s/ Bruce Garcia*
          Bruce Garcia, #07631060
          Assistant Attorney General
          Law Enforcement Defense Division
          Southern Id No. 18934
          Office of the Attorney General
          P.O. Box 12548, Capitol Station
          Austin, Texas 78711
          (512) 463-2080
          Bruce.Garcia@oag.texas.gov
          ATTORNEYS FOR DEFENDANT, LANETTE LINTHICUM, M.D.

## **CERTIFICATE OF SERVICE**

      I hereby certify that pursuant to Fed. R. Civ. P. 5(b), a true copy of the foregoing document was delivered by electronic mail to the Clerk of the Court and via U.S. Mail to Plaintiff David Alan Haverkamp at the address below on this 30th day of July 2020.

      David Alan Haverkamp
      a/k/a Bobbie Lee Haverkamp, #702013
      Stiles Unit
      3060 FM 3514
      Beaumont, Texas 77705

          */s/ John R. Strawn, Jr.*
          John R. Strawn, Jr.