IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DAVID ALLEN HAVERKAMP, ALSO KNOWN AS BOBBIE LEE HAVERKAMP, | § § § § | |
| *Plaintiff*, | § § | CIVIL ACTION 2:17-cv-00018 |
| v. | § § § | |
| LANNETTE LINTHICUM, ET AL., | § § § | |
| *Defendants.* | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Bobbie Lee Haverkamp files this Response to Defendants' Motion for Summary Judgment.

The Court should deny Defendants' Motion for Summary Judgment because the evidence confirms that there are genuine disputes of material fact regarding (a) whether Haverkamp is similarly situated to cisgender female inmates, (b) whether TDCJ has offered a legitimate non-discriminatory basis for denying panties and SRS as a treatment for Gender Dysphoria, (c) whether SRS is a medically necessary treatment for Haverkamp's diagnosed Gender Dysphoria

This Court has already ruled that Haverkamp is similarly situated to cisgender female inmates. ECF. No. 123. (April 3, 20220 Order Declining to Adopt Report and Recommendation). The prior District Court Judge assigned to this case concluded that Haverkamp's alleged "chemical castration" plausibly likened Haverkamp to female inmates such that Haverkamp could not be treated less favorably. On appeal, the Fifth Circuit did not disturb that ruling. On remand, the summary judgment evidence has confirmed the basis for the Court's earlier motion-to-dismiss

1

ruling. In light of the conflicting summary judgment evidence, the Court should deny Defendants' motion.

I. **Summary Judgment Evidence**

Pursuant to Rule 56, Haverkamp incorporates by reference as if fully set forth herein the following summary judgment evidence:

| 1. | Spreadsheets titled "CMC Charges CPT Codes" and "HG Genital System Procedures) |
|---|---|
| 2. | Expert Report of Dr. Walter J. Meyer, III |
| 3. | Grievance Records and Denials (Haverkamp001–075). |
| 4. | Eric Guerrero's TDCJ Corporate Representative Deposition Testimony |
| 5. | Dr. Owen Murray's TDCJ and UTMB Corporate Representative Deposition Testimony |
| 6. | Dr. Joseph Penn's TDCJ and UTMB Corporate Representative Deposition Testimony |
| 7. | Gender Dysphoria Encounter Reports (Haverkamp12690) |
| 8. | TDCJ/UTMB Contract |
| 9. | Various emails from Lanette Linthicum |
| 10. | TDCJ Gender Dysphoria Fact Sheet (TDCJ0000850–851) |
| 11. | Email between Drs. Penn, Linthicum, and Murray (TDCJ0000226-000027) |

II. **Facts**

Haverkamp is a transgender woman in TDCJ custody who was diagnosed with Gender Dysphoria in 2013. In October 2014, Haverkamp was prescribed a course of hormone therapy with a recommendation for SRS after 12 months as a treatment for Haverkamp's Gender Dysphoria. Haverkamp's treating physician Dr. Walter Meyer's report summarizes Haverkamp's medical records and medical treatment and includes a detailed timeline of Haverkamp's treatment. Ex. 2 at ¶¶49–55. Haverkamp incorporates by reference herein the treatment timeline and opinions and conclusions in that report, as well as the medical records cited therein, as well as the arguments and factual statements in Haverkamp's Response to Defendants' Motion for Judgment on the Pleadings.

In short, although Dr. Meyer recommended Haverkamp for SRS and determined that Haverkamp met all eligibility criteria for that treatment, Dr. Meyer was prohibited from referring

2

Haverkamp for surgery after Haverkamp completed that course of treatment. *Id.* ¶¶49–55, After Haverkamp completed more than 12 months of hormone therapy, Dr. Meyer informed Haverkamp that TDCJ would not pay for SRS.

At present, after more than 9 years of hormone therapy, Haverkamp's testosterone levels have been completely suppressed and Haverkamp has been chemically castrated. *Id.* ¶52. Since at least March 2016, Haverkamp has had sex steroid hormones typical for females, and Haverkamp's testosterone levels are in the reference range appropriate for females. *Id.*

Starting in December 2015, Haverkamp filed numerous Step 1 and 2 grievance requests seeking sex reassignment surgery. Ex. 3. All those grievances were denied, including in December 2015 and February 2016. *Id.* Those denials explained that Haverkamp "must be on replacement or higher estrogen for at least one year before surgery can even be considered." *Id.* TDCJ's Step 2 Grievance Denial was based on Policy G-51-11: "The specialists must follow the CMHC Policy G-51.11, with all attachments, to provide you with treatment for this condition." Policy G-51-11 is only Policy cited in those grievance denials. Ex. 4 (Guerrero Dep.) at 56:5–10.

Policy G-51.11 is silent regarding SRS. TDCJ and UTMB corporate representatives have testified that the policy "does not prohibit" sex reassignment surgery and that providers have complete discretion to refer inmates for that treatment. However, the evidence confirms that TDCJ and UTMB have never conducted SRS for any inmate in TDCJ custody and have never considered whether SRS can be a medically necessary treatment for any of the over 500 transgender inmates in TDCJ custody. Ex. 2 ¶¶83–93.

Haverkamp has also repeatedly requested to be issued panties, to grow long hair, and to be issued female cosmetic items, including at least in September 2017, May 2018, 2020, and 2021. All those requests were denied. Ex. 2 at ¶¶100–105 (citing Haverkamp-6283-6289, 6276-6277,

3

5084, 001-075, 12057-12279, 12023-12056). To date, Haverkamp has not been provided panties, cosmetics, or other hygiene items. Guerrero Dep. at 63:4-20, 67:20-68.

TDCJ and UTMB provide vaginoplasty surgeries for inmates who were biologically female at birth, but TDCJ does not provide any type of vaginoplasty surgery for inmates who were biologically male at birth. Ex. 5 (Murray Dep.) at 106:22–107:2, 107:16–18; Ex. 1 (Spreadsheets titled "CMC Charges CPT Codes" and "HG Genital System Procedures). Neither TDCJ nor UTMB have any policies, procedures, or standards governing vaginoplasty, orchiectomy, or phalloplasty surgeries. Clinicians have discretion as to whether or not to institute those procedures. Murray Dep. at 101:18–102:23. From 2013 through present, TDCJ and UTMB have never had have a diagnostic code for any surgical procedures for Gender Dysphoria. *Id.* at 105:8–106:6.

Panties are prohibited at all TDCJ facilities. TDCJ also provides panties for cisgender female inmates, but in all instances does not provide panties to transgender female inmates or any inmates in male facilities. Guerrero Dep. at 104:3-17. TDCJ has not done any analysis of any purported safety concerns associated with providing panties to inmates in male facilities. Guerrero Dep. at 104:3-17. Moreover, TDCJ has never considered whether allowing transgender inmates to be allocated panties, even if a doctor determines that such panties are medically necessary. Guerrero Dep. at 105:12-106:25.

Haverkamp filed this suit in 2017 seeking injunctive relief to prevent the ongoing denial of Haverkamp's rights under the Equal Protection Clause of the Fourteenth Amendment. Defendants previously moved to dismiss on identical grounds to those raised here, namely that Haverkamp as a transgender female inmate is not similarly situated to cisgender female inmates.

This Court rejected those arguments and concluded: "Haverkamp alleges that Defendants helped her undergo gender transition, including chemical castration, making her similarly situated

4

to cis-gendered female inmates and resulting in a violation of the Equal Protection clause when her surgery request was denied." ECF No. 201. After Defendants filed an interlocutory appeal, the Fifth Circuit did not disturb that conclusion.

On remand, the summary judgment evidence has confirmed that Haverkamp has been chemically castrated and there are genuine disputes of material fact regarding whether Haverkamp is similarly situated to cisgender female inmates who receive panties and are allowed to receive vaginoplasty surgery. *See* Ex. 2 ¶52, 60, 77.

### III. Legal Standard

Although summary judgment is proper in a case in which there is no genuine dispute of material fact, this is not a case in which the Court should grant summary judgment. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014); see Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether there is a genuine dispute of material fact that prevents summary judgment, a court must consider all evidence in the light most favorable to plaintiff as the nonmovant. *Tolan*, 572 U.S. at 656–57. The court must also resolve all reasonable doubts about the facts in favor of plaintiff as the nonmovant. *Id.*

As the prior District Court Judge assigned to this case previously acknowledged, the Fifth Circuit has made clear that Equal Protection's "similarly situated" element is not a one-size-fits-all analysis. *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 233 (5th Cir. 2012). "The legal requirement that a class-of-one plaintiff's comparators be 'similarly situated' is not a requirement susceptible to rigid, mechanical application—'[t]here is no precise formula to determine whether an individual is similarly situated to comparators.'" *Id.* "In short, the inquiry is case-specific and requires us to consider 'the full variety of factors that an objectively reasonable ... decisionmaker would have found relevant in making the challenged decision.'" *Id.*

5

There is no Fifth Circuit caselaw addressing whether transgender female inmates are similarly situated to cisgender female inmates for Equal Protection purposes.

## IV.     Genuine Disputes of Material Fact Preclude Summary Judgment.

Defendants move for summary judgment on two grounds: (1) that Haverkamp is not similarly situated to cisgender female inmates who receive vaginoplasty surgery and (2) that Haverkamp is not similarly situated to cisgender female inmates who receive panties and cosmetics.

Genuine disputes of material fact preclude summary judgment on these issues. There are factual disputes regarding (a) whether Haverkamp is similarly situated to cisgendered female inmates, (b) whether TDCJ has offered a legitimate non-discriminatory basis for denying panties and SRS as a treatment for Gender Dysphoria and (c) whether SRS is a medically necessary treatment for Haverkamp's diagnosed Gender Dysphoria.

### A.     There are fact disputes regarding whether Haverkamp is similarly situated to cisgender female inmates who receive panties and makeup and are allowed to receive vaginoplasty surgery.

Defendants cite *Yates v. Stialder*, 217 F.3d 332 (5th Cir. 2000) for the proposition that male and female inmates are not similarly situated if "legitimate penological goals can rationally be deemed to support the decision to treat male and female prisoners differently." Motion at 10. But that case does not support Defendants' arguments. In *Yates*, the Fifth Circuit reversed the district court's dismissal based on its determination that the record at issue there was "wholly inadequate to allow us to determine whether Plaintiffs are similarly situated to the female inmates in LCIW." *Id.* The court ordered additional fact-finding regarding whether the plaintiffs were similarly situated.

Likewise, additional resolution of factual disputes is necessary here. Haverkamp's proposed summary judgment evidence regarding is similarly situated to cisgender female inmates conflicts with Defendants' proffered expert affidavits. Haverkamp's medical records and show that Haverkamp has been chemically castrated, has developed characteristics of a woman, including female breasts, softened skin, diminution of body hair, absence of male pattern baldness, and genital changes. Dr. Meyer's clinical opinion is that Haverkamp has been chemically castrated and has testosterone levels well below the female range. "Haverkamp continues to request and need surgery as a treatment for Gender Dysphoria, despite Haverkamp's testosterone levels being completely suppressed since at least March 2016, being chemically castrated, and having testosterone levels (11.1 ng/dl) well below the female range." Ex. 2 ¶60.

In support of their argument that panties are not necessary for transgender inmates, Defendants cite several "legitimate security reasons" proffered by Eric Guerrero, who also served as TDCJ's corporate representative in this matter. Mr. Guerrero's summary judgment affidavit regarding penological purposes and security concerns is inconsistent with his earlier testimony that TDCJ has not "done any analysis of the threats that would be caused by providing transgender inmates with panties" and that TDCJ has never discussed or considered allocating panties to inmates on a male facility. Guerrero Dep. 104:3–6, 105:12–19. That evidence is also inconsistent with Haverkamp's own experience—Haverkamp has lived as a transgender woman since at least 2014 and has not posed any security threats to other inmates.

Those security concerns are inconsistent with Dr. Meyer's conclusions. Dr. Meyer concludes that "As with treatment of other medical conditions, protocols for medical treatment of Gender Dysphoria for incarcerated individuals do not differ from protocols for medical treatment non-institutionalized persons. An individual's custodial status and/or security classification are not

7

medical justifications to deny medically necessary care, including surgical care, for the treatment of Gender Dysphoria or any other medical condition" and "Denial of needed changes in gender role or access to treatments, including sex reassignment surgery, on the basis of residence in an institution are not reasonable accommodations." Ex. 2 ¶34–36.

These security concerns are also inconsistent with TDCJ's and UTMB's medical prohibition on panties being deemed medically necessary in all instances. TDCJ also has never "considered whether allowing transgender inmates to be allocated panties if a doctor determined that it was medically necessary to treat the inmate's gender dysphoria." *Id.* at 105:12–19.

In addition to prohibiting the panties in male facilities, TDCJ's and UTMB's policies and practices prohibit TDCJ and UTMB medical providers from prescribing, recommending, or deeming medically necessary panties as a treatment for transgender inmates:

> Q. And is it your understanding that that was TDCJ's policy at the time, the policy being not making any recommendations or orders for panties or other undergarments for TDCJ Offenders?
> A. Yes.
> Q. Are you aware of the policy on panties or undergarments changing at any time from 2018 through present?
> A. I do not."

*Id.* at 112:4–12. It is also TDCJ's policy for TDCJ and UTMB medical providers to "avoid any language in their evaluations or notes regarding anxiety or distress relating to an inability to have undergarments." *Id.* at 111:5–12; *See* Ex. 11. In light of these conflicting security and medical reasons underlying TDCJ's prohibition on panties, there are factual dispute regarding whether these concerns outweighs the medical necessity of providing those items to treat inmates with Gender Dysphoria. Ex. 2 ¶104.

Defendants also cite an affidavit of Dr. Jerome Yaklic, who has never treated Haverkamp, for the proposition that vaginoplasty surgeries for transgender females and cisgender females in

8

general are different. But a slightly differing medical treatment does not require summary judgment when there are conflicting factual and medical testimony regarding whether Haverkamp is similarly situated to cisgender female inmates.

### B. SRS is medically necessary treatment for Haverkamp's Gender Dysphoria.

There is also conflicting evidence regarding whether SRS is a medically necessary treatment for Haverkamp's Gender Dysphoria. Defendants argue that SRS is not a medically necessary treatment for Haverkamp. In contrast, Dr. Meyer has concluded that SRS and panties are medically necessary treatments for Haverkamp. Dr. Meyer reached this conclusion based on (a) the definition of "medically necessary" in the UTMB–TDCJ Contract and the associated Inmate Health Services Plan, (b) the definition of "medically necessary" in the WPATH Standards of Care, and (c) based on his medical knowledge and training, years of clinical experience, his review of Haverkamp's testimony and medical records, his prior treatment of Haverkamp, and his recent evaluation and interviews of Haverkamp. Such conflicting expert testimony is more appropriately resolved at trial.

### V. Haverkamp's requested injunctive relief is appropriately tailored and consistent with the PLRA.

Defendants argue that Haverkamp's requested injunction seeking prospective relief is inconsistent with the PLRA because an injunction requiring panties and SRS will impact UTMB's medical discretion.

Haverkamp alleges an ongoing Equal Protection Clause violation and seeks only forward-looking relief. Haverkamp seeks (a) an injunction ordering Defendants to provide SRS as a treatment for her gender dysphoria, (b) a prospective injunction prohibiting Defendants from implementing Policy G-51-11 in a manner that results in a manner that prohibits SRS, and (c) a prospective injunction requiring, among other things, panties and cosmetics. Complaint ¶¶56–59.

9

Haverkamp is seeking medically necessary treatment consistent with Dr. Meyer's diagnosis concluding that: "Haverkamp's feelings of distress relating to Gender Dysphoria will not relent until Haverkamp has sex-reassignment surgery. Haverkamp will deteriorate further if she does not receive this surgery. I have considered Haverkamp's other health conditions, including diabetes, weight, and age, and it is my opinion that these conditions do not contraindicate surgery as a treatment for Gender Dysphoria. The increased medical risk which will come with the gender-confirming surgery is not serious enough to prevent Haverkamp from having surgery" Ex. 2 ¶81–82. Dr. Meyer conducted a risk, benefit, and alternatives analysis and concluded that sex-reassignment surgery is a "medically necessary" treatment for Haverkamp's Gender Dysphoria based on (a) the definition of "medically necessary" in the UTMB-TDCJ Contract and the associated Inmate Health Services Plan, (b) the definition of "medically necessary" in the WPATH Standards of Care, and (c) based on his own medical knowledge, training, and experience, his review of Haverkamp's medical records, his prior evaluation and treatment of Haverkamp, and recent interviews with and evaluation of Haverkamp. Ex. 2 at ¶¶56–82.

Such an injunction seeking medically necessary treatment is consistent with the PLRA.

## VI.   Conclusion

For these reasons, plaintiff asks the Court to deny defendant's motion for summary judgment.

Date: November 13, 2023                                  Respectfully submitted,

/s/ *Ace M. Factor*
Ace M. Factor
State Bar No. 24118923
Southern District ID No. 3707964
Chanler A. Langham
State Bar No. 24053314
Southern District ID No. 659756
Susman Godfrey L.L.P.

10

> 1000 Louisiana Street, Suite 5100
> Houston, Texas 77002-5096
> Telephone: (713) 653-7826
> Fax: (713) 654-6666
> *Attorneys for Plaintiff*
> *Bobbie Lee Haverkamp*

## CERTIFICATE OF WORD COUNT

Pursuant to Court Procedure 16(c), I certify that this motion contains 2,697 words.

> /s/ *Ace M. Factor*
> Ace M. Factor

## CERTIFICATE OF SERVICE

I certify that on November 13, 2023, a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the Southern District of Texas Procedures for Electronic filing.

> /s/ *Ace M. Factor*
> Ace M. Factor