United States District Court
Southern District of Texas
**ENTERED**
September 23, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **DAVID ALLEN HAVERKAMP,** | § | |
| **a/k/a BOBBIE LEE HAVERKAMP,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | CIVIL ACTION NO. 2:17-CV-00018 |
| | § | |
| **LANNETTE LINTHICUM, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

David Allen Haverkamp, also known as Bobbie Lee Haverkamp, is currently incarcerated in the Texas Department of Criminal Justice ("TDCJ"). Haverkamp is a biological male who identifies as a transgender female and suffers from gender dysphoria. The Fifth Circuit has remanded this case for further proceedings after concluding that Haverkamp's *pro se* pleadings failed to allege facts that fell within the scope of the exception to Eleventh Amendment sovereign immunity found in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See Haverkamp v. Linthicum*, 6 F.4th 662, 670–72 (5th Cir. 2021) (per curiam); (Dkt. No. 261 at 13–15). With assistance from appointed counsel, Haverkamp has filed a Second Amended Complaint against Dr. Lannette Linthicum, members of the TDCJ Correctional Managed Health Care Committee ("CMHCC"), and Dr. Owen Murray, who serves as Executive Director of Clinical Services and is Chief Physician Executive for the University of Texas Medical Branch Correctional Managed Care ("UTMB-CMC") program. (Dkt. No. 294).

Haverkamp contends that these Defendants violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by refusing to provide medically necessary sex-reassignment surgery as well as certain gender-related items that are provided to female inmates.  (*Id.* at 2 ¶ 3).

Now pending before the Court is the Defendants' Motion for Judgment on the Pleadings, arguing that the Eleventh Amendment bars this suit, and the Court consequently lacks subject-matter jurisdiction.  (Dkt. No. 329).  Also pending is the Defendants' Motion for Summary Judgment.  (Dkt. No. 330).  Haverkamp responded to each Motion.  (Dkt. Nos. 343, 344).  The Defendants replied, (Dkt. Nos. 345, 346), and Haverkamp filed a pair of sur-replies, (Dkt. Nos. 347, 348).

For the reasons discussed below, the Court **GRANTS** the Defendants' Motion for Judgment on the Pleadings, (Dkt. No. 329), **DENIES AS MOOT** the Defendants' Motion for Summary Judgment, (Dkt. No. 330), and **DISMISSES** this case.

## I.   BACKGROUND

### A.   THE PARTIES AND CLAIMS

Haverkamp is presently confined at the Connally Unit, a men's prison facility operated by TDCJ in Kenedy, Texas.  (Dkt. No. 330-1 at 2).  Haverkamp is a biological male but now identifies as a "transgender woman."  (Dkt. No. 294 at 2 ¶ 6).  Haverkamp is 76 years of age and has been in TDCJ custody since 1995.  (Dkt. No. 330 at 5); (Dkt. No. 330-1 at 2).  Haverkamp is currently serving two 45-year sentences for aggravated sexual assault.  *See Haferkamp [sic] v. State*, No. 14-94-00829-CR, 1996 WL 283902 (Tex. App.—Houston [14th Dist.] May 30, 1996, no writ).

2

Dr. Lannette Linthicum is the Director of the TDCJ Health Services Division.  (Dkt. No. 294 at 3 ¶ 9).  Dr. Linthicum is responsible for "ensuring that TDCJ health care policies, directives, and protocols are properly implemented at all facilities and updating and creating administrative directives and guidelines, including those that relate to care for gender dysphoria."  (*Id.*).  Haverkamp sues Linthicum in her official capacity, (*id.*), along with the following members of the CMHCC: John Burruss, Kris Coons, Brian Edwards, Michelle Erwin, Cynthia Jumper, Julia Hilner, and Philip Keiser (the "Committee Members"), (*id.* at 2–3 ¶¶ 7–8); (Dkt. No. 321); (Dkt. No. 329 at 6).  TDCJ contracts with two public medical schools, UTMB and Texas Tech Health Science Center ("Texas Tech"), to provide medical care to state inmates.  (Dkt. No. 90 at 4); (Dkt. No. 344-2 at 22 ¶ 63).  The CMHCC, which is composed of a TDCJ representative, private physicians appointed by the governor, and physicians employed by UTMB and Texas Tech, is responsible for developing a managed health care plan for all inmates confined in TDCJ that "(1) specifies the types and general level of care to be provided to persons confined by the department; and (2) ensures continued access to needed care in the correctional health care system."  Tex. Gov't Code §§ 501.133, .146(a).  It also serves as a dispute-resolution forum for disagreements between TDCJ and health care providers about inmate healthcare.  *See id.* § 501.148(a).

In addition, Haverkamp sues Dr. Owen Murray in his official capacity as Executive Director of Clinical Services and Chief Physician Executive for the UTMB-CMC.  (Dkt. No. 294 at 3–4 ¶ 10).  In that role, Dr. Murray is responsible for overseeing health care provided to inmates housed in TDCJ facilities that are serviced by UTMB and

ensuring that those inmates are provided with medical, mental health, and dental care under an Inmate Health Services Plan, which establishes the scope of health care services that UTMB provides. (Dkt. No. 329 at 14); (Dkt. 344-2 at 22 ¶ 63); (Dkt. No. 344-5 at 10). Inmates in TDCJ who suffer from gender dysphoria are treated at the Gender Dysphoria Specialty Clinic at the prison hospital UTMB operates in Galveston. (*See* Dkt. No. 332 at 4).

Haverkamp contends that the Defendants are responsible for health care policies and procedures for the delivery of care to inmates in TDCJ, including the treatment for gender dysphoria. (Dkt. No. 294 at 3–4 ¶¶ 9–10). Haverkamp claims to have been denied male-to-female sex-reassignment surgery ("MTF-SRS" or "SRS") under the TDCJ policy covering treatment for gender dysphoria, Correctional Managed Health Care Policy G-51.11 ("Policy G-51.11"), in violation of the Fourteenth Amendment Equal Protection Clause because Haverkamp was treated differently from biological female inmates. (*Id.* at 13–14 ¶ 51).

The current version of Policy G-51.11—on "Treatment for Inmates with Intersex Conditions, or Gender Dysphoria, Formerly Known as Gender Identity Disorder"—governs the diagnosis and treatment of TDCJ inmates with gender dysphoria. (Dkt. No. 332 at 65–67). The policy states that treatment is determined by medical and mental-health professionals on a "case-by-case basis as clinically indicated." (*Id.* at 65). According to this policy, only a designated provider or consultant at the Gender Dysphoria Specialty Clinic can make or confirm a diagnosis of gender dysphoria. (*Id.* at 66). If an inmate is diagnosed with gender dysphoria and hormone therapy is initiated,

the designated Gender Dysphoria Specialty Clinic consultant will routinely monitor the inmate for adverse effects and adjust the dosage as needed. (*Id.*). If clinically indicated, a provider may refer the inmate for mental health treatment for any associated emotional or behavioral problems, which "will emphasize supportive treatment modalities." (*Id.* at 67).

In addition to claiming a denial of MTF-SRS because of Policy G-51.11, Haverkamp also claims that the Defendants denied Haverkamp "necessaries and commissary items" that are available to similarly situated female inmates, including "a long-hair pass, panties, appropriate clothing, cosmetics, and other hygiene items." (Dkt. No. 294 at 14 ¶ 55). Haverkamp seeks injunctive relief directing the Defendants to provide MTF-SRS and other treatment for gender dysphoria, including electrolysis and voice therapy. (*Id.* at 14–15 ¶¶ 57, 59). Haverkamp also requests ongoing injunctive relief that would afford additional items and privileges consistent with Haverkamp's expressed gender, including appropriate clothing, panties, cosmetics, and a long-hair pass. (*Id.* at 14–15 ¶ 59).

The Court reviews those claims below following an overview of Haverkamp's diagnosis and treatment for gender dysphoria while in TDCJ. The Court also provides the procedural history of this case, which has been pending since 2017 and has featured several prior decisions.

### B.    HAVERKAMP'S DIAGNOSIS AND TREATMENT FOR GENDER DYSPHORIA

In 2013, Haverkamp was diagnosed with gender identity disorder or gender dysphoria. (Dkt. No. 294 at 9 ¶ 30). The American Psychiatric Association defines

"gender dysphoria" as a "marked incongruence between one's experienced/expressed gender and assigned gender" for a duration of at least six months. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 452 (5th ed. 2013) ("DSM-5"). That incongruence must manifest in at least two of the following ways:

1. A marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics (or in young adolescents, the anticipated secondary sex characteristics);

2. A strong desire to be rid of one's primary and/or secondary sex characteristics because of a marked incongruence with one's experienced/expressed gender (or in young adolescents, a desire to prevent the development of the anticipated secondary sex characteristics);

3. A strong desire for the primary and/or secondary sex characteristics of the other gender;

4. A strong desire to be of the other gender (or some alternative gender different from one's assigned gender);

5. A strong desire to be treated as the other gender (or some alternative gender different from one's assigned gender); or

6. A strong conviction that one has the typical feelings and reactions of the other gender (or some alternative gender different from one's assigned gender).

*Id.*

While transgender individuals may or may not experience distress related to their biological gender, those who suffer from gender dysphoria experience "clinically significant distress related to their biological sex." (Dkt. No. 332 at 6). To treat this distress, the World Professional Association for Transgender Health ("WPATH") suggests that, in addition to hormone replacement and other therapeutic approaches, sex-

reassignment surgery is necessary for many individuals with gender dysphoria.[1]  (Dkt. No. 294 at 7 ¶ 24).

On October 17, 2014, Dr. Walter Meyer examined Haverkamp at the UTMB Gender Dysphoria Specialty Clinic.  (Dkt. No. 294 at 9 ¶ 31); (Dkt. No. 343-2 at 16).  Dr. Meyer prescribed a 12-month course of hormone replacement therapy with Estradiol (estrogen), (Dkt. No. 294 at 9 ¶ 31); (Dkt. No. 343-2 at 16).  At a follow-up visit in March 2015, Dr. Meyer examined Haverkamp again and explained that Haverkamp "needed at least a year on enough estrogen to suppress the endogenous testosterone production before being considered eligible for [gender-reassignment] surgery."  (Dkt. No. 343-2 at 16–17).

On October 12, 2015, Haverkamp filed a Step One grievance against Dr. Linthicum (Grievance No. 2016025967) while incarcerated at the McConnell Unit.  (Dkt. No. 333 at 5–6).  Haverkamp requested MTF-SRS and complained that UTMB improperly denied that medical care.  (*Id.*).  A practice manager at the prison unit investigated and replied on December 29, 2015, noting that the medical records showed Haverkamp needed to be on hormone replacement "for at least one year before surgery [could] even be considered."  (*Id.* at 6).  Records of the investigation show that Haverkamp had a follow-up examination with Dr. Meyer on December 15, 2015, and that Dr. Meyer observed that Haverkamp's testosterone was still elevated.  (*Id.* at 11).  Dr. Meyer recommended

---

[1]    Consistent with the Fifth Circuit, this Court notes that "the WPATH Standards of Care reflect not consensus, but merely one side in a sharply contested medical debate over sex reassignment surgery."  *Gibson v. Collier*, 920 F.3d 212, 221 (5th Cir. 2019).

increasing Haverkamp's dosage of hormone-replacement therapy, which Haverkamp was required to be on for a year before surgery was an option.  (*Id*.); (Dkt. No. 343-2 at 17).

On January 5, 2016, Haverkamp filed a Step Two grievance, which repeated the request for a written plan of care for MTF-SRS.  (Dkt. No. 333 at 3–4).  An administrative assistant investigated the Step Two grievance and provided a report with a suggested response to Dale Dorman, RN, Manager of TDCJ Health Services Division.  (*Id*. at 16).  On February 2, 2016, the TDCJ Health Services Division replied as follows:

> Review of the medical records indicated you have been seen at Hospital Galveston (HG) in the Gender Dysphoria (GD) Specialty Clinic for your gender identity concerns.  The specialists must follow the CMHC Policy G-51.11, with all attachments, to provide you with treatment for this condition. You may wish to review this policy, in its entirety, through the Law Library at your convenience.  All medications, treatments, and referrals are based on the clinical findings of the provider at the time of their assessment.  While you maintain the right to refuse any services offered, you do not have the liberty to dictate what medications, treatments, or appointments will be prescribed.  You are encouraged to work with the medical providers and staff to ensure the best outcome for your health care needs.

(*Id*. at 4, 16).  Noting further that the requested remedy of MTF-SRS was "not available through the Offender Grievance Program," the reviewing official concluded that no further action was warranted.  (*Id*.).

During another follow-up appointment on March 8, 2016, Dr. Meyer told Haverkamp that Haverkamp needed "to stay on a high-dose [of] estradiol for at least a year before we would even consider a recommendation for surgery."  (Dkt. No. 294 at 11 ¶ 38); (Dkt. No. 343-2 at 18).  Haverkamp alleges that on March 26, 2016, UTMB

communicated that it would not provide Haverkamp with MTF-SRS.  (Dkt. No. 294 at 11 ¶ 39).

###### C.   PROCEDURAL HISTORY OF HAVERKAMP'S LAWSUIT

On January 13, 2017, Haverkamp filed a *pro se* prisoner civil rights complaint against Dr. Joseph Penn, who served as Director of UTMB Mental Health Services, and Dr. Linthicum in their official capacities, for denying Haverkamp medical care.  (Dkt. No. 1 at 3).  Haverkamp alleged that Dr. Penn and Dr. Linthicum denied Haverkamp MTF-SRS, gender-related items, and educational materials in violation of the Eighth Amendment.  (Dkt. No. 2 at 3–4).  Haverkamp also alleged discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.  (*Id*. at 17).  After granting Haverkamp leave to proceed *in forma pauperis*, Magistrate Judge B. Janice Ellington authorized service for Dr. Penn and Dr. Linthicum.  (Dkt. No. 23).

Dr. Penn and Dr. Linthicum filed separate Motions to Dismiss under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 25); (Dkt. No. 26). Subsequently, the Defendants moved to stay the case until the Fifth Circuit decided *Gibson v. Collier*, which involved a TDCJ inmate's claim that they were unconstitutionally denied MTF-SRS for gender dysphoria.  (Dkt. No. 49 at 2).  After a telephone conference with the Parties, Judge Ellington granted the stay pending a decision from the Fifth Circuit in *Gibson* and granted Haverkamp leave to amend the complaint.  (Dkt. No. 60 at 2–3).

Haverkamp filed an Amended Complaint against several "John and Jane Doe" defendants.  (Dkt. No. 62 at 1, 3).  Haverkamp alleged that these defendants breached

their duty of care and discriminated against Haverkamp by denying a vaginoplasty surgery available to biological female inmates.  (*Id*. at 4).  Referencing Policy G-51.11, Haverkamp specifically alleged the denial of MTF-SRS.  (*Id*. at 8).  Haverkamp sought MTF-SRS and treatment as prescribed by the WPATH standard of care, as well as gender-related clothing, cosmetics, and female hygiene items.  (*Id*. at 8–11).  Haverkamp also requested skin care, a medical pass for long hair, and educational materials on gender dysphoria.  (*Id*. at 11).

After reviewing the Amended Complaint, Judge Ellington issued an Order noting that counsel for Dr. Linthicum—an Assistant State Attorney General—had represented during a previous hearing that Dr. Owen Murray was the proper defendant if Haverkamp was seeking MTF-SRS, and the principal members of the CMHCC were the proper defendants if Haverkamp was seeking a change in policy on the provision of health care for transgender inmates. (Dkt. No. 70 at 2).  Because Haverkamp sought MTF-SRS and appeared to request a change to the standard of care for the treatment of transgender inmates under the applicable policy, Judge Ellington substituted Dr. Murray as a defendant and requested an advisory from the Attorney General's Office identifying each member of the CMHCC.  (*Id*. at 4).  After these members were identified, Judge Ellington authorized service of process for Dr. Murray and the current members of the CMHCC.  (Dkt. No. 73 at 2); (Dkt. No. 79 at 1).  Dr. Penn was later dismissed from the case.  (Dkt. No. 129); (Dkt. No. 154).

On March 19, 2019, the Fifth Circuit decided *Gibson v. Collier*, 920 F.3d 212 (5th Circ. 2019).  In *Gibson*, the Fifth Circuit held that "[a] state does not inflict cruel and

unusual punishment by declining to provide sex reassignment surgery to a transgender inmate." *Id.* at 215. The Fifth Circuit observed that there was significant disagreement among the medical community about sex-reassignment surgery and that "respected medical experts fiercely question whether sex reassignment surgery, rather than counseling and hormone therapy, is the best treatment for gender dysphoria." *Id.* at 216 (citing *Kosilek v. Spenser*, 774 F.3d 63, 76–78, 87 (1st Cir. 2014) (en banc)); *see also Kosilek*, 774 F.3d at 76–78, 87 (surveying conflicting testimony concerning the medical efficacy and necessity of sex-reassignment surgery).

Once *Gibson* was decided and the stay lifted, the Defendants—who at the time were Dr. Ben Raimer, Dr. Linthicum, Dr. Murray, Dr. Cynthia Jumper, Dr. Parker Hudson, Dr. Penn, and Dr. John Mills—filed a joint Motion to Dismiss Haverkamp's Amended Complaint. (Dkt. 90). The Defendants argued that Haverkamp failed to state a claim under the Equal Protection Clause or the Eighth Amendment and that the lawsuit was barred by Eleventh Amendment sovereign immunity because Haverkamp failed to articulate an ongoing constitutional violation. (*Id.* at 3–4). Magistrate Judge Julie K. Hampton issued a Memorandum and Recommendation to grant the Defendants' Motion to Dismiss for failure to state a claim upon which relief could be granted. (Dkt. No. 99 at 1, 16–17). Senior District Judge Hilda Tagle declined to adopt the Memorandum and Recommendation. (Dkt. No. 123). Pointing to the lenient standard of review that applied to *pro se* pleadings and the legal standard for motions governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure, Judge Tagle concluded that Haverkamp's allegations could, if taken as true, state a plausible claim under the Equal Protection Clause. (*Id.* at

2–3). Judge Tagle denied the Defendants' Motion to Dismiss without further analysis. (*Id*. at 3).

The Defendants filed an interlocutory appeal from the denial of their Motion to Dismiss based on their entitlement to sovereign immunity. (Dkt. No. 144). While that appeal was pending, the Defendants—who by this time included newly appointed members of the CMHCC in their official capacities—filed another Motion to Dismiss, arguing that (1) Haverkamp lacked standing because they could not redress the alleged injuries; (2) the suit was barred by Eleventh Amendment immunity; and (3) the suit failed to allege a plausible equal-protection claim. (Dkt. No. 158). Judge Hampton recommended denying the motion based on the conflicting representations about which officials were proper parties and Judge Tagle's previous decision about Haverkamp's Equal Protection claim. (Dkt. No. 201 at 12–14). Judge Tagle adopted that recommendation, (Dkt. No. 212), and the Defendants appealed that ruling. (Dkt. No. 215); (Dkt. No. 216).

The Fifth Circuit consolidated the Defendants' appeals and vacated Judge Tagle's decision to deny sovereign immunity. *See Haverkamp*, 6 F.4th at 672. The Fifth Circuit held that Haverkamp failed to show that members of the CMHCC were proper defendants because Haverkamp failed to "plausibly allege that the Committee members enforced any policy or were involved in enforcing any decision that Haverkamp challenges." *Id.* at 670. For similar reasons, the Fifth Circuit held that Haverkamp failed to allege facts showing that Dr. Linthicum, as Director of TDCJ Health Services, played any role in the decisions Haverkamp challenged as unconstitutional. *Id.* at 671. The Fifth

12

Circuit therefore determined that Haverkamp's claims did not fall within the scope of the exception to Eleventh Amendment sovereign immunity under *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *Haverkamp*, 6 F.4th at 670–71. The Fifth Circuit also held that the State was not judicially estopped from asserting that Haverkamp had sued the wrong officials because it was Haverkamp's burden to plead facts establishing the Defendants' connection to the challenged decisions. *Id*. at 671. In light of the State's representations that the Defendants were the proper parties to sue, the Fifth Circuit did not dismiss any Defendants and remanded the case for further proceedings. *Id*. at 672. In a concurring opinion, one of the Fifth Circuit panel members suggested that Haverkamp have another opportunity to file an amended complaint and encouraged the District Court to grant Haverkamp appointed counsel. *Id*.

On remand, Judge Tagle appointed counsel to represent Haverkamp. (Dkt. No. 271). Shortly before retiring, Judge Tagle recused herself from the case, which was reassigned to the undersigned on November 12, 2021. (Dkt. No. 280); (Dkt. No. 281). As instructed by Judge Hampton, (Dkt. No. 287), Haverkamp's appointed counsel filed a Second Amended Complaint on March 26, 2022, which claims that the Defendants denied Haverkamp MTF-SRS and other gender-related items in violation of the Equal Protection Clause. (Dkt. No. 294).

### D.   THE DEFENDANTS' MOTIONS

The Defendants include current members of the CMHCC, Dr. Linthicum, and Dr. Murray, who are sued in their official capacities as state employees. The Defendants have filed a joint Motion for Judgment on the Pleadings, arguing that the case should be

dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Dkt. No. 329). The Defendants argue that Haverkamp's suit is barred by the Eleventh Amendment because (1) the Defendants are improper parties under *Ex parte Young*; (2) the relief Haverkamp seeks is unavailable under *Ex parte Young*; and (3) there is no evidence of an ongoing violation of a federal right. (*Id*. at 10–17). The Defendants argue further that Haverkamp failed to establish Article III standing because the complaint does not allege or show that Haverkamp suffered an injury in fact that is fairly traceable to the Defendants' actions. (*Id*. at 10, 17–18). Finally, the Defendants argue that Haverkamp's requests to wear long hair and gender-related clothing in the form of a bra are moot because Haverkamp has been provided with a bra and a pass that allows long hair under a recent change in TDCJ policy. (*Id*. at 10, 18–19).

In addition, the Defendants move for summary judgment because Haverkamp cannot demonstrate a violation of the Equal Protection Clause. (Dkt. No. 330 at 10–16). The Defendants specifically argue that (1) Haverkamp is not similarly situated to biological female inmates who require vaginoplasty surgery, which is a reconstructive procedure that is fundamentally different from MTF-SRS, (*id*. at 10–14); and (2) Haverkamp is not similarly situated to biological female inmates who are allowed to wear panties and cosmetics (*id*. at 14–16). The Defendants also argue that the injunctive relief requested by Haverkamp is not permissible under the Prison Litigation Reform Act (the "PLRA") because the injunction is not narrowly drawn. (*Id*. at 16–18).

In support of their motions, the Defendants provide (1) an expert affidavit from Eric Guerrero, who serves as Deputy Director for TDCJ's Correctional Institutions

Division, (Dkt. Nos. 329-1, 330-1); (2) an expert affidavit from Dr. Jerome L. Yaklic, who is Chair of UTMB's Department of Obstetrics and Gynecology, (Dkt. No. 330-2); (3) a transcript of Dr. Murray's deposition testimony, (Dkt. No. 329-2); (4) an expert report from Dr. Penn, which summarizes Haverkamp's relevant medical records, (Dkt. No. 332); and (5) Haverkamp's TDCJ grievance records, (Dkt. No. 333).

## II.   LEGAL STANDARDS

The basis of the Defendants' Motion for Judgment on the Pleadings is that the case should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction.

Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'" *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010) (quoting *Epps v. Bexar–Medina–Atascosa Cntys. Water Improvement Dist. No. 1*, 665 F.2d 594, 595 (5th Cir. 1982)). As a result, "a party may neither consent to nor waive federal subject matter jurisdiction." *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999). "When courts lack subject matter jurisdiction over a case, they lack the power to adjudicate the case." *Nat'l Football League Player's Assn. v. NFL*, 874 F.3d 222, 225 (5th Cir. 2017). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). Likewise, dismissal under Rule 12(b)(1) is

appropriate if the plaintiff lacks standing or if the claims asserted are barred by a state's sovereign immunity.  *See, e.g.*, *Little v. KPMG L.L.P.*, 575 F.3d 533, 540 (5th Cir. 2009); *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240 (5th Cir. 2005).  The party seeking federal court review bears the burden of demonstrating that jurisdiction is proper.  *See Lower Colo. River Auth. v. Papalote Creek II, LLC*, 858 F.3d 916, 921 (5th Cir. 2017).

When considering whether subject-matter jurisdiction exists, a district court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."  *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019).  A district court may dispose of a motion to dismiss for lack of subject-matter jurisdiction based "on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Id.*

## III.   DISCUSSION

### A.   Moot Claims

The Defendants argue that Haverkamp's request for injunctive relief seeking a long-hair pass and a bra is moot because Haverkamp has been given these items.  (Dkt. No. 329 at 18–19).  The Defendants note that TDCJ's Laundry Service Department Policy 01.02 allows for the allocation of bras to biological male inmates when ordered by a medical provider who conducted a physical examination.  (*Id.* at 19).  Haverkamp has been issued a bra under this policy. (Dkt. No. 329-1 at 6).  Haverkamp has also received permission and been issued a pass under a recent change in TDCJ's grooming policy,

Security Memorandum SM-06-16 (Rev. 6), which allows male inmates to grow long hair so long as they meet certain eligibility requirements.  (Dkt. No. 329-1 at 5–6).

A claim becomes moot and no longer presents an actual case or controversy for purposes of subject-matter jurisdiction under Article III of the United States Constitution "'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S.Ct. 721, 726, 184 L.Ed.2d 553 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam)).  Under the case-or-controversy requirement, "[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit."  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478, 110 S.Ct. 1249, 1254, 108 L.Ed.2d 400 (1990) (some internal quotation marks omitted) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)).  If a claim is moot, it "presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999).

Haverkamp does not dispute being provided with a bra under the direction of medical providers and receiving permission to grow long hair.  By failing to respond to the Defendants' argument, Haverkamp has abandoned these claims.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).  Because it is undisputed that Haverkamp has been provided with the relief sought, the claims for injunctive relief concerning a long-hair pass and appropriate clothing in the form of a bra are now moot.  The Defendants' Motion for Judgment on the Pleadings, (Dkt. No. 329), regarding these

claims is granted.  The only remaining claims concern Haverkamp's request for MTF-SRS, gender-related clothing in the form of panties, and cosmetics.

### B.    ELEVENTH AMENDMENT IMMUNITY

To prevail in a civil rights action under 42 U.S.C. § 1983, "'a plaintiff must first show a violation of the Constitution or of federal laws, and then show that the violation was committed by someone acting under color of state law.'"  *Turner v. Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005)).  Haverkamp seeks relief against all Defendants in their official capacity as state actors.  A suit against a state official in his official capacity is considered a suit against the state itself.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the state itself." (citation omitted)).

The Defendants argue that Haverkamp's lawsuit is barred by the Eleventh Amendment and must be dismissed for lack of subject-matter jurisdiction.  (Dkt. No. 329 at 10–11).  "Federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies."  *Vogt v. Bd. of Comm'rs*, 294 F.3d 684, 688 (5th Cir. 2002).  As a result, "[f]ederal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it."  *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014).  Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when it

enacted 42 U.S.C. § 1983.  *See NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) (citing *Quern v. Jordan*, 440 U.S. 332, 340, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979)).  Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state, including a state agency.  *See Will*, 491 U.S. at 66, 109 S.Ct. at 2309.

Despite the jurisdictional bar imposed by the Eleventh Amendment, "a federal court may enjoin a state official in his official capacity from taking future actions in furtherance of a state law that offends federal law or the federal Constitution."  *Moore*, 743 F.3d at 963.  Under an exception to Eleventh Amendment immunity identified in *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908), lawsuits may proceed in federal court when a plaintiff requests prospective relief against state officials in their official capacities for ongoing violations of federal law.  To proceed under this exception, "[t]he suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law."  *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).

The Defendants argue that the *Ex parte Young* exception does not apply and that their Eleventh Amendment immunity remains intact because they are not proper defendants.  (Dkt. No. 329 at 11).  "For the [*Ex parte Young*] exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'"  *City of Austin v. Paxton*, 943

19

F.3d 993, 997 (5th Cir. 2019) (quoting *Young*, 209 U.S. at 157, 28 S.Ct. at 453). Absent such a connection to enforcement, the suit is barred by Eleventh Amendment sovereign immunity. *Id.* at 1002.

"The precise scope of the 'some connection' requirement is still unsettled . . . ." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020). The Fifth Circuit has emphasized, however, that "it is not enough that the official ha[s] a '*general* duty to see that the laws of the state are implemented.'" *Id.* at 400–01 (emphasis in original) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). "Moreover, a mere connection to a law's enforcement is not sufficient—the state officials must have taken some step to enforce." *Id.* at 401. And the defendant official must have a "particular duty" to enforce the challenged policy. *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001).

### 1.   SRS Claims Against Members of the CMHCC

The Fifth Circuit previously observed that Haverkamp failed to plausibly allege that members of the CMHCC "enforced any policy or were involved in enforcing any decision" regarding Haverkamp's request for SRS. *Haverkamp*, 6 F.4th at 670.

In the Second Amended Complaint, Haverkamp points to the CMHCC's statutory duty to develop and approve a "managed health plan" that "specifies the types of general level of care" for TDCJ inmates and "ensures access to needed care in the correctional health care system." (Dkt. No. 294 at 5 ¶ 17) (citing Tex. Gov't Code § 501.1456(a)). Haverkamp notes further that members of the CMHCC were responsible for "promulgating" Policy G-51.11, which governs the treatment of TDCJ inmates with gender dysphoria. (*Id.* at 13 ¶ 51). The Fifth Circuit has already held, however, that the

role of CMHCC members in formulating and promulgating the policy at issue, G-51.11, does not subject them to suit under *Ex parte Young*:

> As this court has explained, a governor's promulgation of an executive order alone is not sufficient to make him suable under *Ex parte Young* because the "statutory authority . . . to issue, amend, or rescind an Executive order is not the power to enforce." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 477 (5th Cir. 2020) (internal quotation marks omitted).  Likewise, the Committee's authority to promulgate Policy G-51.11, standing alone, is not the power to enforce that policy.

*Haverkamp*, 6 F.4th at 670.  As a result, these allegations are insufficient to show that members of the CMHCC are proper defendants under *Ex parte Young*.

Haverkamp also points to the CMHCC's statutory duty to resolve disputes between a treating physician and the prison system.  (Dkt. No. 294 at 5 ¶ 16) (citing Tex. Gov't Code § 501.148(a)(2)).  In exercising that role, Haverkamp contends that the CMHCC and its members "enforce [Policy G-51.11] in a manner that [MTF-SRS] is never allowed, even when medically necessary, when such surgery is provided to cisgendered female inmates."  (*Id*. at 13–14 ¶ 51).  Haverkamp maintains that the CMHCC and its members "are responsible for implementing Policy G-51.11, which was specifically referenced in the February 2, 2016, denial of Haverkamp's grievance and that resulted in the denial of Haverkamp's rights under the Equal Protection Clause."  (*Id*. at 14 ¶ 52).  Haverkamp acknowledges, however, that Policy G-51.11 is silent as to MTF-SRS.  (*Id*. at 13 ¶ 51).  Haverkamp does not allege facts or otherwise show that the CMHCC was consulted in connection with any of Haverkamp's grievances or that its members were involved in settling a dispute between Haverkamp's treating physicians and the prison

health care system.  This is insufficient to show that the CMHCC or its membership has the power to enforce the policies it promulgates or to dictate how those policies are implemented by health care providers in the prison setting.  Accordingly, members of the CMHCC are entitled to Eleventh Amendment immunity, and the claims against them are dismissed under Rule 12(b)(1).

### 2.      SRS Claims Against Dr. Linthicum

Haverkamp alleges that in her capacity as Director of TDCJ Health Services Division, Dr. Linthicum "is responsible for ensuring that TDCJ health care policies, directives, and protocols are properly implemented at all facilities and for updating and creating administrative directives, clinic, and health guidelines, including those that relate to care for gender dysphoria." (Dkt. No. 294 at 3 ¶ 9).  Haverkamp does not include specific allegations linking Dr. Linthicum to any adverse, challenged decision regarding Haverkamp's treatment for gender dysphoria or the provision of gender-related items. The Fifth Circuit has already held that, absent a specific link, Dr. Linthicum's generalized involvement is insufficient.  *See Haverkamp*, 6 F.4th at 671 ("Put simply, in a system with approximately 130,000 inmates in custody, and absent any allegations tying Linthicum to the specific decisions at issue, it cannot be plausibly inferred that Linthicum played any role in the decisions Haverkamp challenges as unconstitutional." (footnote omitted)).

Haverkamp alleges further that Dr. Linthicum is responsible for constitutional violations in her capacity as Director of the TDCJ Health Services Division, which oversaw the responses to Haverkamp's grievances.  (Dkt. No. 294 at 12 ¶ 45).  Haverkamp contends that Dr. Linthicum was "personally responsible" for denying the 2016 grievance

that requested MTF-SRS.  (*Id*. at 13 ¶ 45).  The grievance that Haverkamp references, however, is not signed by Dr. Linthicum.  It is undisputed that the grievance was investigated by an administrative assistant, who provided a report with a suggested response to Dale Dorman, a Manager with the TDCJ Health Services Division.  (Dkt. No. 333 at 3–4, 16).  Other than pointing to Dr. Linthicum's supervisory role as Director of the TDCJ Health Services Division, Haverkamp offers no facts establishing that she had any involvement in the investigation or the denial of that grievance.  Because the allegations in the Second Amended Complaint are insufficient to overcome Dr. Linthicum's entitlement to immunity, the claims against her are dismissed under Rule 12(b)(1).  *See Haverkamp*, 6 F.4th at 671.

### 3.      SRS Claims Against Dr. Murray

Haverkamp alleges that as Executive Director of Clinical Services and Chief Physician Executive for UTMB-CMC, Dr. Murray is responsible for reviewing and adopting an Inmate Health Services Plan that provides "medical, mental health, and dental services" to TDCJ inmates.  (Dkt. No. 294 at 3–4 ¶ 10).  Haverkamp alleges that Dr. Murray was "responsible for overseeing the diagnoses and recommendations" for treatment of TDCJ inmates by health care providers at UTMB.  (*Id*. at 12 ¶ 43).  Haverkamp further alleges that Haverkamp's treating physician, Dr. Meyer, recommended MTF-SRS but that Dr. Murray was responsible for denying, and continuing to deny, that course of treatment.  (*Id*.).  These allegations could be sufficient to overcome sovereign immunity where Dr. Murray is concerned, *see City of Austin*, 943 F.3d at 1002 (holding there need only be a "scintilla of enforcement by the relevant state

23

official" to apply *Ex parte Young*), but Dr. Murray disputes that Haverkamp's treatment providers made a recommendation for MTF-SRS.  (Dkt. No. 329 at 14); (Dkt. No. 329-2 at 51, 57).

In response, Haverkamp presents an expert report from Dr. Meyers, who treated Haverkamp at the Gender Dysphoria Specialty Clinic from 2014 through 2018, which states that "Gender Dysphoria consultants were prohibited from recommending or referring any inmate for [SRS] as treatment for Gender Dysphoria."  (Dkt. No. 343-2 at 6 ¶ 24).  Dr. Meyer states that Dr. Penn, who manages the UTMB Gender Dysphoria Specialty Clinic, and Dr. Murray told him that surgery would not be offered for gender dysphoria.  (Dkt. No. 343-2 at 31 ¶ 93).  It was Dr. Meyer's impression, therefore, that G-51.11 prohibited recommendations or referrals for MTS-SRS.  (*Id*. at 31 ¶ 89).

The Defendants dispute Dr. Meyer's evidence, arguing that Dr. Murray remains an improper defendant under *Ex parte Young* because there is no evidence showing that Dr. Meyer or any other provider concluded that MTF-SRS was medically necessary or that Dr. Murray overrode that conclusion.  (Dkt. No. 346 at 3).  And the Defendants argue that, in any case, ordering surgery is a matter of discretion that involves medical judgment by UTMB providers.  Therefore, even if Dr. Murray or the other Defendants had the authority to direct how UTMB providers practice medicine, *Ex parte Young* does not permit an injunction telling them how to do so.  (Dkt. No. 329 at 15–16); (Dkt No. 346 at 5–6).

The Court need not resolve the issue of whether Dr. Murray or any other provider had the authority to approve Haverkamp for MTF-SRS.  Even if Dr. Murray does, an

injunction requiring Dr. Murray or medical providers under his direction to perform MTF-SRS would impose upon their medical discretion in a manner that *Ex parte Young* prohibits.  *See Richardson v. Texas Secretary of State*, 978 F.3d 220, 242 (5th Cir. 2020) ("[A]t the very minimum, a court may not 'control [an officer] in the exercise of his discretion.'" (quoting *Young*, 209 U.S. at 158, 28 S.Ct. at 453)).  As Dr. Yaklic explains, MTF-SRS involves a series of major operations that entail "significant medical and surgical risks." (Dkt. No. 330-2 at 4–5 ¶ 13).  A candidate for MTF-SRS would require medical clearance by a specialist based on several factors, including the patient's age, weight, BMI, and preexisting co-morbid conditions.  (*Id*. at 5 ¶ 13).

The record reflects that Haverkamp is 76 years old, stands 5 feet 11 inches, weighs 222 pounds, and has a BMI of 31, which is within obesity range.  (Dkt. No. 332 at 13). Haverkamp has several co-morbid conditions, including diabetes mellitus, hypertension, and hyperlipidemia.  (*Id*. at 13-14).  Haverkamp is also at high risk for chronic kidney disease and chronic kidney failure.  (*Id*. at 14).  These factors would impact the highly discretionary decision of whether to proceed with a major surgery.  (Dkt. No. 330-2 at 5 ¶ 13); *see Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285, 293, 50 L.Ed.2d 251 (1976) (Decisions about whether a particular treatment is indicated "is a classic example of a matter for medical judgment.").  As the Fifth Circuit has recognized, there is "robust and substantial good faith disagreement dividing respected members of the expert medical community" about whether MTF-SRS is medically necessary or beneficial for treating gender dysphoria.  *See Gibson*, 920 F.3d at 220.  Thus, while Dr. Murray may be a proper defendant, the relief requested is not permitted under the *Ex parte Young* exception.

Accordingly, Dr. Murray retains sovereign immunity, and the Defendants' motion to dismiss is granted as to Haverkamp's SRS claims.

### 4.   Gender-Related-Items Claims Against All Defendants

Apart from SRS, the Fifth Circuit also concluded that Haverkamp failed to plausibly allege that members of the CMHCC had "any connection to the enforcement of a policy that contributed to or resulted in" the denial of the requested gender-related items and privileges.  *Haverkamp*, 6 F.4th at 670–71.  Likewise, Haverkamp's original complaint "contain[ed] no allegation plausibly linking Linthicum with" "the long-hair pass[] and female commissary items."  *Id.* at 671.

Haverkamp has still not alleged facts showing that any of the Defendants were personally involved in denying the request for these items or that they are responsible for enforcing a policy that prohibits Haverkamp from receiving them.  Instead, Haverkamp's requests were denied under TDCJ's security policies that forbid the possession of these items in male prisons.  (Dkt. No. 329-1 at 6–8).  The Defendants, in their roles as doctors and health care advisors, did not play any part in creating or enforcing these security-related policies.

As Haverkamp notes, TDCJ "has never 'considered whether [to] allow[] transgender inmates to be allocated panties if a doctor determined that it was medically necessary to treat the inmate's gender dysphoria.'"  (Dkt. No. 343 at 11–12) (quoting Dkt. No. 343-4 at 29)).  Haverkamp did not allege—and the record does not show—that TDCJ would treat cosmetics any differently.

So even if the Defendants play a role in recommending gender-related items as medically necessary, (*see* Dkt. No. 343 at 11–12), this does not show a connection to the enforcement or creation of TDCJ's *security* policies—the reason that Haverkamp's requests for gender-related items were denied. As a result, the Defendants retain immunity on these claims, and the claims against them are dismissed under Rule 12(b)(1).

### C.   EQUAL PROTECTION CLAIMS

Haverkamp also alleges that Defendants are violating the Equal Protection Clause because they continue to deny MTF-SRS. Haverkamp seeks an injunction ordering the Defendants to provide vaginoplasty surgery, which is available when medically necessary to biological female inmates. (Dkt. No. 294 at 8 ¶¶ 26–28); (*Id.* at 12–14 ¶¶ 42–48, 50–53, 56–57). Haverkamp contends that the Defendants have also not provided panties or other items, such as cosmetics, which are offered to biological female inmates. (*Id.* at 11, 14 ¶¶ 40, 54–55). The Defendants argue they are entitled to summary judgment on these claims because Haverkamp cannot establish a constitutional violation of the Equal Protection Clause. (Dkt. No. 330 at 10–16).

But because Defendants retain their sovereign immunity under *Ex parte Young*, the Court does not have jurisdiction over Haverkamp's equal-protection claims. *See, e.g., United States ex rel. Foulds v. Tex. Tech Univ.*, 171 F.3d 279, 286 (5th Cir. 1999) ("To rule on a merits question before, or in addition to, answering the omnipresent jurisdictional question would contravene the well-established principle that the federal courts may not issue advisory opinions."). "'Without jurisdiction[,] the court cannot proceed at all in any cause. . . . [W]hen it ceases to exist, the only function remaining to the court is that of

announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)).

Because the Court does not have jurisdiction over Haverkamp's claims against the Defendants, the Court stops there. It would be improper to opine on Haverkamp's equal-protection claim, Article III standing, or the propriety of an injunction under the PLRA in light of the Court's sovereign-immunity holdings. Accordingly, the Defendants' Motion for Summary Judgment on the merits of these claims, (Dkt. No. 330), is therefore denied as moot.

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendants' Motion for Judgment on the Pleadings, (Dkt. No. 329), and **DENIES AS MOOT** the Defendants' Motion for Summary Judgment, (Dkt. No. 330).

It is SO ORDERED.

Signed on September 23, 2024.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**